J. C. HARBACHECK, Appellee, v. MOORLAND TELEPHONE COMPANY et al., Appellants.

No. 39704.

June 24, 1929.

*James I. Dolliver,* for appellants.

*Kelleher & Mitchell* and *Maurice J. Breen,* for appellee.

Kindig, J.—J. C. Harbacheck, the plaintiff-appellee, is a farmer, who owns land in Sections 17 and 18, within Elkhorn Township, Webster County. Between those two sections is a  public highway. Of the sections aforesaid, 18 is on the west side of that thoroughfare, and Section 17 to the east thereof. It is appellee's fence on the east side of said road which caused the present controversy. After giving appellee a purported notice to move the fence farther eastward, so that it would correspond with a line fixed and designated by the county engineer, the defendants-appellants Anthony Sheker and John Julius, township trustees, proceeded, when appellee neglected acting, to make forcible removal accordingly. At the same time, these public officials directed the defendants-appellants Moorland Telephone Company, a corporation, and Robert White and James Stanek, its officers, to change the telephone line in harmony with the new location of the fence. So, when the trustees attempted to thus change the fence, and the telephone company and its officials began the relocation of its poles and wires, appellee, in August, 1927, instituted the present suit, and thereby obtained a temporary injunction, restraining such action on the part of appellants; and, on final hearing, the temporary order was made permanent.

As a basis for relief, there are, generally speaking, two grounds urged by appellee: one is in the nature of an abatement, and the other in bar: The former relates to the inadequacy of the notice above mentioned and the insufficiency of its service; while the latter has to do with a question referring to whether the highway was ever, in fact, established so as to include said fence. However, if appellee's first contention is right, then the township trustees never had the right to make a forcible removal of the fence, because, without the preliminary notice, there could be no forcible removal of the fence, even though the same were within the boundaries of the legally established road. See *Mosier v. Vincent*, 34 Iowa 478. Authority for such removal by the trustees is found in Sections 4834 to 4837, inclusive, of the 1927 Code. Those sections contain the following provisions:'

"4834. The board of supervisors and township trustees shall cause all obstructions in highways under their jurisdiction, to be removed.

"4835. Poles used for telephone, telegraph, or other transmission purposes, shall not be removed until notice, in writing, of not less than thirty days, has been given to the owner or company operating such lines, and in case of fences, notice in writing of not less than sixty days has been given to the owner, occupant, or agent of the land inclosed by said fence.

"4836. Said notice shall, with reasonable certainty, specify the line to which such fences or poles shall be removed, and shall be served in the same manner that original notices are required to be served.

"4837. All such fences and poles shall, within the time named, be removed to such line on the highway as the county engineer may designate. If there be no county engineer, the board of supervisors shall designate said line. *If not so removed the public authorities may forthwith remove them.* [The italics are ours.]"

I. Manifestly, no owner need submit to a forcible removal of his fence by the township trustees until notice has been given him in the manner and way, and for the time, prescribed by the foregoing statutes.

Appellee insists that the purported notice given him did not meet the test in at least two respects: First, the time thereof did

not comply with the 60-day minimum; and second, the service was not such as is required by statute. Investigation discloses that the alleged notice was given to appellee, the landowner, less than 60 days before the attempted forcible removal of the fence. Consequently, the objection must be sustained; for the above-named Section 4835 of the statutes requires a notice of at least 60 days; and the same was enacted for the benefit and protection of the landowner, in order that he might have reasonable time within which to tear down and rebuild his fence and thus avoid losses and expenses which might otherwise occur. Underlying the statutory mandate is a legislative effort to avoid that which might otherwise be arbitrary or unreasonable.

Hence, because of that inadequacy, the trustees had no right to proceed. Such must be so regardless of the merits relating to the road's establishment.

II. Obviously no attempt was made by those trustees to comply with the statutory demands concerning the manner of serving said notice; for they made their alleged service by a registered letter, rather than through the manner and way specified for original notices, as prescribed by Section 4836, supra. Section 11060 of the 1927 Code declares that an original notice shall be served in this way:

"1. By reading it [the notice] to the defendant or offering to do so in case he neglects or refuses to hear it read, and in either case by delivering him personally a copy thereof, or, if he refuses to receive it, offering to do so. * * *

"3. By taking an acknowledgment of the service indorsed thereon, dated and signed by the defendant."

No contention is made by appellants that they sought to or did, when giving their purported notice of removal, comply with the statutory requirements for the service of an original notice. Unquestionably the statutory provisions for the notice and its service are mandatory.

Therefore, because of the insufficient service, the township trustees were not permitted to make the forcible removal of the fence. Of necessity, their action in that regard was properly abated.

III. However, subject to the foregoing discussion, we find the merits concerning the establishment of the road between Sec-

tions 17 and 18 are with the appellants. In view of the records and official proceedings shown by the evidence, it appears that the public way was legally established at a width of 66 feet. This road was authorized and brought into existence in 1870. Some of the records are abridged, and in other respects incomplete; yet, when viewed in connection with the permissible presumptions, the proceedings taken by the county officials substantially complied with the laws contained in the Code of 1851 and the 1860 Revision. Until the contrary is shown, it is presumed, within proper limitations, that public officials acted legally in performing authoritative acts in the establishment of highways. *Keyes & Crawford v. Tait,* 19 Iowa 123; *McCollister v. Shuey,* 24 Iowa 362; *Woolsey v. Board of Supervisors of Hamilton County,* 32 Iowa 130; *Quinn v. Baage,* 138 Iowa 426; *Yengel v. Allen,* 179 Iowa 633.

With those legal principles in mind, consideration will be given to the specific objections to the original establishment of this highway made by the appellee. They are:

First. That the petition for the road was made by citizens of Otho Township, while the public way itself is now located in Elkhorn Township. Therefrom it is concluded that there was no  petition for a road in Elkhorn Township. Appellants theorize that Otho Township probably at one time included what is now Elkhorn Township. About this, however, the record is silent. But reference to the abstract indicates that the petition was for a road "* * * in Township 88 north, Range 29 west of the Fifth Principal Meridian, Iowa." Elkhorn Township is thereby located, and thus the present public thoroughfare in that township was sufficiently petitioned for.

Second. That there is no showing that the statutory notice was given. Requirements in that respect, under the then existing law, were a posting for four weeks at the courthouse door,  and in addition thereto, in three public places in the township. Yet recitation is made in a resolution by the county supervisors, passed at their session in January, 1869, that the "four weeks' notice has been given by being posted up at the courthouse door in Fort Dodge, and in three public places in * * * (township)

through which said road is to pass * * *.'' Aided, then, by the presumption aforesaid, the record is adequate in this regard.

Third. That Section 533 of the 1851 Code was not complied with, because the record does not disclose plat or field notes. A study makes certain that the record reveals the existence of a  plat and field notes. Anyway, this road was on the section line, and would necessarily need to be one half on each side thereof. *Yengel v. Allen*, supra, declares:

''As the highway was established on the section line * * *, the precise location was definitely fixed. * * * This being so, the commissioner's report was not defective because of no survey's having been made.''

See, also, *Palmer v. Clark*, 114 Iowa 558.

Fourth. That the 1851 Code and the 1860 Revision provided for a court procedure on the establishment of a road, while the present highway was created by the county board of super-  visors. By a search of the legislative history, it is found that the 1851 Code did contemplate a court proceeding; but by amendment, as shown in the 1860 Revision, similar power was conferred upon the county board of supervisors. *Yant v. Brooks*, 19 Iowa 87. Final action was taken by the county board, and, because of the amendment aforesaid, this was sufficient for the road's establishment.

Fifth. That the Code of 1851, as well as the Revision of 1860, required security for the expenses growing out of the application. Within the road record made at the January session  in 1869, above mentioned, is the following phrase: ''* * * security having been given, which is hereby approved and conditioned, as provided by law * * *.'' Under the authorities first cited, the presumption must be that such security was, in fact, given.

Resultantly, a careful reading of the entire record convinces that there was a substantial compliance with the law in the establishment of this road, and the district court's finding to the contrary should be corrected.

IV. Again, it is maintained by appellees that the record does not locate the highway established in 1870 as now contended

for by appellants. Here the question becomes more serious. One thing, however, is certain, and that is, the road  is 66 feet wide. Revision of 1860, Chapter 46, Section 820; *Quinn v. Baage,* supra; *Davis v. Pickerell,* 139 Iowa 186; *Webster County, v. Wasem Plaster Co.,* 188 Iowa 1158; *Dickson v. Davis County,* 201 Iowa 741. Furthermore, the section line is the center of the highway. Wherefore, the only problem presented is to locate the section line, because the road must extend 33 feet on each side thereof. For evidence at this point, appellants rely upon the assistant county engineer, who made a survey for the purpose of indicating the boundaries in question. Basis for this survey was a previous survey made in 1908. The purpose of the former survey is not revealed, and it does not appear definitely that the previous engineer intended or purported to have located the section line as fixed by the government. Concerning this, the assistant county engineer, who made the present survey, testified as follows:

"Q. The east line of this highway can only be determined, under your theory, by correctly determining the section line? A. By a resurvey it could be. The only way it could be told whether it was right or wrong is to have a resurvey."

Such uncertainty on the part of the witness who made the present survey leaves us equally in uncertainty; and before it can be judicially determined where the section line is; there must be furnished sufficient evidence thereof.

Wherefore, the judgment and decree of the district court is erroneous, so far as it relates to a finding that the road was not established by the board of supervisors. Likewise, that part of the judgment and decree is wrong which establishes a prescription highway. Otherwise, said judgment and decree should be, and is, affirmed; and the appellants are hereby allowed an opportunity to give proper notice, make due service thereof, and produce the necessary evidence regarding the location of the section line.—*Modified and affirmed.*

ALBERT, C. J., and EVANS, WAGNER, and GRIMM, JJ., concur.