68 N.W.2d 305 (1955)
STATE of Iowa ex rel. Ray F. COX, C.V. Barnhart, Clarence Myerhoff, Joseph Tribon, Paul Schneider, August W. Grappendorf, Martha Rewoldt, Mary Bockholt, Fritz W. Diers, Emil Schneider, James R. Alexander, Nelson Gaede, Clarence Klenzmann, Wilbert Wedemeier, Albert Erhardt, Erwin Thurm, Louis Westendorf and Edwin Heineman, Appellees,
v.
CONSOLIDATED INDEPENDENT SCHOOL DISTRICT OF READLYN, Victor Happel, Walter Meier, Herbert Pries, Fred Matthias, Bernard Matthias, R. D. Merill and Fred W. Piehl, and their successors in office, Appellants.
No. 48615.
Supreme Court of Iowa.
February 8, 1955.
*306 Pike, Sias, Butler & Hoxie, Waterloo, for appellants.
Donohue & Wilkins, New Hampton, for appellees.
*307 SMITH, Justice.
On July 19, 1952, a petition was filed with the county superintendent of schools of Bremer County, Iowa, for the organization, under chapter 276, Iowa Code 1950, repealed Acts 1953, 55 G.A., Ch. 117, § 35, I.C.A. of defendant Consolidated Independent School District of Readlyn. Some fifty sections of land are embraced in the project, consisting of parts of four townships, and including the town of Readlyn, all in Bremer County, Iowa.
The county superintendent, in proper time ("within ten days") caused to be published in the Waverly Democrat, of Waverly, Iowa, "Notice of Limiting of Time to File Objections to the Formation of Consolidated Independent School District."
This notice was presumably given pursuant to Code section 276.4, I.C.A. which so far as pertinent here provided:
"Within ten days after the petition is filed, the county superintendent shall fix a final date for filing objections * * * and give notice * * * in a newspaper published within the territory described in the petition, or if none be published therein, in the next nearest town or city in any county in which any part of the territory * * is situated. * * *" (Emphasis supplied.)
It is conceded no newspaper was published in the described territory and that the Tripoli Leader, published in Tripoli, Iowa, met the language of the statute emphasized above.
Code section 276.5, I.C.A. next following, read: "On the final date fixed for filing objections, interested parties may present evidence and arguments, and the county superintendent shall review the matter on its merits and within five days after the conclusion of any hearing, shall rule on the objections and shall enter an order fixing such boundaries * * * as will in his judgment be for the best interests of all parties concerned, having due regard for the welfare of adjoining districts; or dismiss the petition. The county superintendent shall at once publish this order in the same newspaper in which the original notice was published."
After this hearing the county superintendent in the instant case ruled on the objections that had been filed and entered an order fixing the boundaries, and published notice thereof in the Bremer County Independent, also published in Waverly.
Later sections in Code chapter 276, I.C.A., provided for appeal to the county board of education by "any petitioner, or any person who filed objections, or any person residing upon or owning land included in or excluded from the district by any change in the boundary lines from those proposed in the petition," Code section 276.6, I.C.A. and later details not pertinent here.
In the present case appeal to the county board of education from the county superintendent's ruling was taken by ten of these relators and numerous others who are not named as relators and the ruling was affirmed, thus fixing the boundaries of the proposed district. The statute provides no further appeal. The decision is final. Code section 276.8, I.C.A.
Code section 276.11, I.C.A., provided the county superintendent shall call an election "when the boundaries * * * have been determined", * * * "by giving notice * * * in the same newspaper as previous notices concerning it have been published * * *."
This notice was published in the Waverly Democrat, and the election was held September 30, 1952. There is no controversy over the details or result of the election. The proposition to establish the consolidated independent district carried by a majority of five of the votes from outside the town of Readlyn, and 133 of those within the town limits.
When such a consolidation proposition carries Code section 276.18, I.C.A., required a special election to be called for election of directors "by giving notice by one publication in the same newspaper in which the *308 former notices were published". Such election was held October 18, 1952, in the instant case upon publication of the notice in the Waverly Democrat.
The present proceeding was initiated December, 1952, and trial was commenced December 22, 1953. Decree was filed January 21, 1954, holding that the "purported Consolidated Independent School District of Readlyn, Bremer County, Iowa, is a de facto public corporation, and as such is performing the services and duties, and exercising the privileges of a school corporation."
The decree holds further that because of the failure "to observe the mandatory statutory provisions as to publications of notices * * * there was a failure to substantially comply with the law in such respect, and that such failure prevented a de jure formation of the said purported district * * *."
The decree provides further that since it is essential school facilities be maintained and since the school year commencing in the fall of 1953 is well advanced, the de facto corporation may continue to function "until the end of the current year."
Defendants have appealed.
I. The trial court's decision poses the question as to the intention of the legislature in providing for publication of the various notices in a newspaper published "in the next nearest town or city" in case there is none "published within the territory described in the petition." It holds them mandatory and necessary to the formation of a de jure school corporation.
Defendants contend the county superintendent acquires jurisdiction "by the filing with him of the petition required under" Code section 276.2, I.C.A., "and his jurisdiction once acquired is not lost by subsequent omission to follow literally and strictly the statutes."
They argue the courts have been liberal in construction of school organization statutes and that the notices in question are "of the informational type rather than the type upon which jurisdiction depends, since jurisdiction is conferred not by the notices, but by filing the petition.
The term "jurisdiction" has been said to be one "in general use, of comprehensive and large import, having different meanings, dependent on the connection in which it is found and the subject matter to which it is directed". 50 C.J.S., Jurisdiction, pp. 1089, 1090. As applied to courts it is "a term of large and comprehensive import and embraces every kind of judicial action, and hence every movement by a court is necessarily the exercise of jurisdiction. It includes jurisdiction over the subject matter as well as over the person." 14 Am.Jur., Courts, § 160.
It is important to determine in what sense the word is used when we find it in a judicial opinion or in legal argument. Defendants' argument does not do this. As used in Zilske v. Albers, 238 Iowa 1050, 1055, 29 N.W.2d 189, and other cases cited by defendants referring to administrative, as distinguished from judicial proceedings, the word doubtless corresponds roughly to what is termed "jurisdiction of subject matter." If, as in the statutes involved here, some method or form of notice is provided for rendering subsequent proceedings binding upon interested individuals, "jurisdiction" or power to be so obtained is comparable to what in legal proceedings, we call jurisdiction of the person. When "jurisdiction" is mentioned we need often, as here, to consider which kind is meant.
We said in the Zilske case, supra: "It is not necessary to determine whether jurisdiction attaches with the filing of the original petition or upon the giving of notice. In either event, jurisdiction was acquired here before the withdrawal of the 52 signers. And such withdrawal did not deprive defendants of jurisdiction to proceed further."
In that case, after the county superintendent had fixed time of hearing on the petition and had given notice provided by Code section *309 276.4, I.C.A., of the final date for filing objections, 52 signers of the petition filed an unverified writing stating they withdrew their names therefrom. No question was urged as to the sufficiency of the notice or its publication. Clearly the language quoted above referred primarily to "jurisdiction of the subject matter" conferred by the filing of the petition and the holding was that the withdrawal of some signers did not oust that "jurisdiction to proceed further" after it had once attached. The petition was sufficient when filed and when notice under Code section 276.4, I.C.A., was given it authorized the superintendent to continue the proceeding as against "all parties concerned". Code section 276.5, I.C.A.
State ex rel. Moulton v. Consolidated Independent District of Buck Creek, 195 Iowa 637, 640, 192 N.W. 5, 6, was a case arising under an earlier statute, predecessor of the statute we are considering here but substantially similiar to it. At least the differences are not material. As we have already pointed out, under code provisions under discussion the superintendent's duty, after ruling on objections and entering an order fixing boundaries of the proposed district, is to publish the order "in the same newspaper in which the original notice was published."
The earlier statute involved in the Buck Creek case required the county superintendent to notify all objectors by registered letter of the decision, and in case of an appeal by any objector to give him notice by registered mail of the time and place where such appeal would be heard.
In that case this registered mail notice was, by oversight, omitted as to one objector, namely the relator who brought the matter into court. The county superintendent discovered his oversight after the time fixed for appeal to the county board had elapsed. He gave a new notice of the time within which objections could be filed. Two of the original objectors refiled the original petition, the county superintendent sustained the petition and upon appeal to the county board of education his decision was sustained. It was contended on appeal to this court that because the belated notice to relator was not within the time designated by the statute, the superintendent lost "jurisdiction and authority to proceed."
We held the duty imposed upon the county superintendent was mandatory but that his failure to act within the statutory time by giving to an appealing objector notice of the time and place of hearing the appeal did not operate as a limitation upon his "jurisdiction and authority * * * to cause a new notice to be published in order that a fatal defect in the subsequent procedure may be corrected". This "jurisdiction" was of the subject matter conferred by the filing of the petition. The notice in question affected only the personal right of the one objector.
Defendants cite Smith v. Blairsburg Independent School District, 179 Iowa 500, 508, 159 N.W. 1027. It was a certiorari proceeding to test the legality of the proceedings. The decision there, so far as concerned jurisdiction was that the filing of the petition conferred jurisdiction to determine its sufficiency and that such determination was conclusive if not appealed. The case did not involve the effect of a failure to give subsequent statutory notice to bind interested persons as to subsequent proceedings.
We realize these illustrations are not entirely adequate or pertinent here. But they illustrate that in using the term "jurisdiction" in matters of this kind the distinction made in judicial procedure between jurisdiction of the subject matter and jurisdiction of the person must be kept in mind.
It is true, when the petition was filed in compliance with statute, the county superintendent acquired jurisdiction (or authority) to proceed in the matter. But to retain that jurisdiction, as to persons affected by the proposed formation of a consolidated district, the prescribed subsequent *310 notices must be given in substantial compliance with the statute.
Defendants argue that had the statute been followed it would have meant publication "in the Tripoli Leader, the newspaper having the smallest general circulation in the county." They also say: "It would seem that almost any published notice sufficient to advise the public generally such as the notices in this case would be sufficient to sustain this consolidation. As an actual matter of fact, fewer people would have had knowledge if the statutes in question had been literally followed."
Unfortunately for this argument the legislature saw fit to specify the exact manner of selecting the medium of publication. It did not specify publication "in such paper as would reach the greater number of people." Nor did it entrust to the county superintendent any discretion in selecting the medium of publication which that official deemed best suited to the purpose. On the contrary it carefully prescribed that if no newspaper be published "within the (described) territory" the notice shall be given in one published "in the next nearest town or city". And significantly it expressly made the same requirement as to all three notices. (In their reply brief defendants argue the word "shall" in section 276.4 "refers mainly to the time in which certain notice should be given rather than the manner" of giving. Somewhere in the sentence they would have us insert the word "may." We cannot do this.)
These notices were for the benefit, not of specific individuals but of all persons interested, adversely or otherwise, in the projectin the language of Code section 276.5, I.C.A.: "all parties concerned, having due regard for the welfare of adjoining districts".
Possibly the legislature might have left the selection to the official. But certainly had it so intended it would not have given such explicit directions.
We do not deem the notices as merely "informational." They were, in the sense we have endeavored to define, "jurisdictional." Substantial compliance with the statute was a necessary condition precedent to the formation of a de jure school corporation under Code chapter 276, I.C.A., binding on all interested persons.
The cases cited by defendants, properly analyzed, are not in disharmony with our conclusion here. None is directly in point. We do not find there has been any precedent involving the exact question presented. It is essentially one of first impression.
We appreciate (with considerable sympathy) something of the difficulties confronting county superintendents under our present complex and frequently changing school statutes. But we are clear the requirements here were mandatory and necessary to the consummation of the proposed consolidation.
II. Defendants contend the state, or the relators who bring this proceeding on behalf of the state, were estopped or barred by waiver and laches to prosecute the suit. Incidentally we find no direct claim or evidence of laches. Various matters are urged: Some of the relators were signers of the petition; two withdrew as relators just prior to trial of this quo warranto proceeding; the objections filed with the county superintendent did not complain of insufficiency of the notice that official had given of the time for filing objections; a number of the relators were present in person at the hearing on objections and raised no such objection to the notice; some of the relators voted at the election, the legality of which they now question on the ground of insufficiency of the publication of the notice of election.
In this connection complaint is made of the trial court's conclusion that the notices in question did not apply solely to the objectors but to all persons interested in the subject matter.
*311 We have already indicated disapproval of this latter complaint. The first notice, required by Code section 276.4, I.C.A., is clearly intended to advise any potential objectors. The second notice, Code section 276.5, I.C.A., follows action by the county superintendent, not only ruling on the objections but "fixing such boundaries for the proposed school corporation". Under this statute, before it contained any requirement for notice of the county superintendent's ruling fixing boundaries, it was held neither the county superintendent nor county board of education could enlarge the boundaries of the proposed district because "Only those persons residing within the territory described in the petition and notice are advised of the proceedings." Brooker v. Ludlow, 189 Iowa 760, 768, et seq., 179 N.W. 145, 149. Under the statute we are considering the superintendent could change the boundaries to the possible disapproval of many interested parties.
It cannot of course be seriously contended the notice of special election, Code section 276.11, I.C.A., was merely for the benefit of objectors. The election was of course designed to advise every elector within the proposed district.
III. We think any citizen, complying with 58 I.C.A.Rule 300, R.C.P., and affected by the proposed consolidation, was qualified as relator to question the legality of the procedure. Of the eighteen who are named here as relators only six were objectors before the county superintendent. These six and four who did not file objections were among the twenty-one who appealed to the county board of education.
We need not discuss any error based on alleged disqualification of some of the relators by reason of estoppel or otherwise. Without conceding any were so disqualified it is sufficient to say there were others of whose qualification there can be and is no argument.
It is contended however the sufficiency of the publication of notices was not questioned before either the county superintendent or the county board of education and therefore the relators cannot raise it on behalf of the state in order to impeach the legality of the proceeding.
The ready and conclusive answer is that quo warranto is not an appellate proceeding in which the legality of the organization can only be questioned upon propositions raised before the inferior tribunal. And even if the relators were found to be estopped to plead that issue in their own private interest, or had waived it by failure to assert it before the county superintendent or county board, it can be considered here because the suit is being prosecuted in the interests of the public as well as of the relators. "Even where the relator is found to be estopped or disqualified to prosecute the action in his own private interest it has been held that the court will retain jurisdiction and pass upon the merits of the case so far as it affects public interest." State v. Des Moines City R. Co., 135 Iowa 694, 712, 109 N.W. 867, 874; State v. Winneshiek Co-operative Burial Ass'n, 234 Iowa 1196, 1199, 15 N.W.2d 367.
IV. Defendants, by preliminary motion to dismiss, argue that by naming the proposed Conslidated Independent School District a party defendant plaintiffs (or relators) "admitted its corporate existence" and could not be heard to deny it.
The defendants named in the caption of the petition are the proposed district and certain named persons "and their successors in office." The trial court, in overruling defendants" motion, aptly cited "Nelson v. [Consolidated] Independent School District, 181 Iowa 424 [164 N.W. 874] in which case both the school district and the officers were made parties and the court said that the naming of the corporation did not admit its legality if such legality were in fact denied in the petition. Such is the case here * * *."
A reading of the cited case confirms the comment of the trial court and confirms the ruling. Language in Anderson v. Hadley, *312 Iowa, 63 N.W.2d 234, seems also to be in point.
The petition here shows conclusively that the legality of the organization is being questioned. There is no allegation that even remotely admits or implies otherwise. We see no impropriety or admission in naming the de facto or proposed corporation in the caption.
V. Defendants urge there was error in denying their motion to make the county board of education a party defendant. The ruling was based on the fact the board's only connection with the procedure was in an appellate capacity as to ruling of the county superintendent. It is argued strenuously that the board of education was an interested party because it "has general and specific duties relating to the school system."
The court in its ruling rejected the contention and held the board was not an indispensable party. That decision was sound.
The function of the county board was appellate. The proceeding in district court was not to review its decision as would be the case in certiorari where the court whose decision is to be reviewed is made a party. The present proceeding, as it came to the district court, was to question the legality of the defendant as a de jure school corporation. There is nothing in the Record to indicate the county board was called on to pass on any question of procedure or "jurisdiction." Presumably it had before it only the merits of the proposed consolidation, a question in no way involved here.
If the county board, as an interested party for other reasons, had desired to intervene in this proceeding, it may have had that right, a question upon which we express no opinion. We do hold it was not an indispensable party.
VI. It appears that after the petition was filed with the county superintendent and after notice thereof was given limiting the time for filing objections, one H. H. Matthias filed a request that "my property be included * * *. It is my desire that my children be given the privilege to attend the Readlyn High School." The county superintendent sustained this "objection" and added the "N.E.¼ of Section 33 of Maxfield Township." That description was included in the later election notice.
One August W. Grappendorf, of Waterloo, Iowa, testifies he was the owner of the north half of this quarter section and that no notice was served on him. He says he did not live on it or have any children in the proposed district. He is one of the relators herein but filed no objection before the county superintendent and did not appeal to the county board. The Record shows he learned at some time of the proposed consolidation. Apparently H. H. Matthias was his tenant.
The trial court held the inclusion of this land after filing of the petition "was not authorized by law, and was at least an irregularity." The final decision, however, was based squarely on the failure to follow the statute relating to notices. We are not prepared to say the boundaries of a proposed district as set out in the petition might not be changed if proper notices under the statute were thereafter given, but that issue is not before us here, but the incident illustrates the importance of substantial compliance with the statutory provisions for notice.
VII. Defendants argue strenuously that there should be a reversal under Code section 274.4, I.C.A., which provides: "No action shall be brought questioning the legality of the organization of any school district * * * after the exercise of the franchises and privileges * * * for the term of six months."
It is difficult to state their theory concisely at this point. Possibly we should dismiss it summarily by pointing out the statute of limitations was not pleaded.
The suit was commenced December 19, 1952. The petition had been filed June 19, 1952, with the county superintendent and *313 of course all subsequent proceedings were within the six months preceding commencement of suit.
Defendants contend that all relators were in one way and another disqualified, or barred by waiver, estoppel and laches and that although the suit was technically in time, no one else could prosecute it because no one else had filed objections under Code section 276.4, I.C.A.
We have already rejected the premises of their argument on this point and need not repeat it here.
VIII. It is urged the trial court erred in taxing costs to the individual defendants under Rule 304, R.C.P., which provides: "(a) Judgment against any defendant or intervenor shall include judgment for the costs of the action. Judgment against a pretended corporation shall adjudge the costs against the person or persons acting as such."
Defendants argue the corporation herein involved is not a "pretended" but a "de facto corporation of some long standing." There is technical merit as well as justice in the argument. The seven elected officials of the proposed district, defendants here, were probably among the 458 "qualified voters" who signed the petition asking for the formation of the district. The Record does not show. But it is unjust to place on them the entire burden of costs.
A judgment against a de facto school corporation may be a legal anomaly and ordinarily have little value. However, the trial court here properly provided for the de facto district to continue to function in the public interest "until the end of the current year." We assume it is still so functioning though a new current year is in progress. There will doubtless have to be some financial readjustments in restoring the former status.
We think the decree here should be modified to permit the individual defendants to apply to payment of costs any funds available that would have belonged to the district had it been de jure, the judgment to stand against them however for any deficiency remaining.
As so modified the decision is affirmed.
Modified and affirmed.
All Justices concur.