STATE OF IOWA ex rel. FRED J. WARRINGTON et al., appellants, v. COMMUNITY SCHOOL DISTRICT OF ST. ANSGAR et al., appellees.

No. 48988.

(Reported in 78 N.W.2d 86)

1168

July 26, 1956.

Supplemental Opinion August 30, 1956.

Rehearing Denied September 24, 1956.

Elwood, Anderson & Elwood, of Cresco, and W. H. Salisbury, of Osage, for appellants.

Zastrow, Noah & Smith, of Charles City, and L. E. Plummer, of Northwood, for appellees.

LARSON, J.—A quo warranto action was commenced to test the validity of the Community School District of St. Ansgar, Iowa. The trial court found the reorganization valid, and plaintiffs appeal. The record discloses the following facts: Petitions were filed in the Mitchell County school superintendent's office asking the formation of the St. Ansgar School District; notices were published and a hearing on the proposal was held on the second day of February, 1954. At the time of this hearing the president of the board, Mr. Eske, who resided in the area proposed for incorporation, presided. Boundary changes having been made, an adjourned hearing was set and notices given thereof. At that meeting, which Mr. Eske did not attend, final boundaries were determined. Notice of the election was then published and the election conducted. Fourteen of the eighteen districts, or portions of districts involved, voted favorably and the new district was organized.

Embodied in the proposed plan was the town of St. Ansgar which has over two hundred in population. Plaintiffs contend defendants wrongfully required all voters to come to St. Ansgar to cast their votes; that the election notice was fatally defective; that a partial judge alone was improperly allowed to aid an aged lady in voting; that plaintiffs were denied unjustly the right to have challengers at the polls; and that one polling place was improperly changed on the day of election. Much reliance for error is predicated upon the contention that, although separate ballot boxes were furnished for each of the districts, the officers failed to place the ballot boxes in each of the existing school districts as required by section 275.20, Code of Iowa 1954.

Perhaps plaintiffs' principal complaint is that after the election the Otranto Consolidated District, which was one of the four districts that rejected the proposition, separated a small territory lying north of it from the principal part of the territory to the south. In other words, the territories involved no

longer had a common boundary or adjoined at any point, and to pass from one part to the other one must cross over another existing school district, i.e. the Otranto Consolidated District.

Although plaintiffs also complain of the trial court's action in striking Division II of their petition asking for a determination of the constitutionality of chapter 275 of the 1954 Code of Iowa, the nub of this case is found in these two difficult but obvious questions of law, i.e. (1) Is the requirement found in section 275.20 that "* * * the voters residing upon the territory outside the limits of such school corporation [within a town] shall vote separately in each existing school district affected or portion thereof upon the proposition to create such new corporation * * *", a mandatory requirement and essential to the formation of the valid new district? (2) Must the territory of a newly formed school district be contiguous, or does a separation due to a rejection by a connecting district or portion thereof vitally affect its establishment?

I. It may be well to set out here the pertinent portions of section 275.20, Code of Iowa 1954, which provides:

"When it is proposed to include in such district a school corporation containing a city, town, or village with a population of two hundred or more inhabitants, the voters residing upon the territory outside the limits of such school corporation shall *vote separately in each existing school district* affected or portion thereof upon the proposition to create such new corporation. School districts affected or portion thereof shall be defined to mean that area to be included in the plan of the proposed new school district. Where there are more than three districts or portions of districts voting on a reorganization program, the proposition must carry by a majority vote in seventy-five percent of the districts involved; provided, however, that those districts voting against the proposition shall not be included in the newly formed district. * * *." (Emphasis supplied.)

Standing alone, the provisions of this section as to the place of voting are perfectly clear. "In each existing school district affected" seems as clear an expression as is possible under the English language as to *where* something must be done. We have often held that words used by the legislature are unambiguous when the meaning of the words can be found in the sec-

tion itself, and although it would here seem unnecessary to seek further proof of their intendment and meaning, yet a careful research of the legislative history and purpose strengthens its clear mandatory provision. Grimes v. The Northwestern Legion of Honor, 97 Iowa 315, 324, 64 N.W. 806, 66 N.W. 183, and cases cited therein; Hindman v. Reaser, 246 Iowa 1375, 1379, 72 N.W.2d 559, 562; 2 Horack's Sutherland Statutes and Statutory Construction 339 (Third Ed. 1943). Also see Opinions of Attorney General of March 18, 1955.

In Jones v. Thompson, 240 Iowa 1024, 1036, 38 N.W.2d 672, 678, we said:

"The only legitimate purpose of statutory construction and interpretation is to ascertain the legislative intent. And when the language of the statute is so clear, certain and free from ambiguity and obscurity that its meaning is evident from a mere reading, then the canons of statutory construction are unnecessary, because there is no need of construction * * *. We need not search beyond the wording of the statute [citing cases]."

From the legislative journals we find that the Fifty-fifth General Assembly (1953) gave special attention to the language used in section 275.20. See Acts of the 55th G. A., chapter 117, section 20, House File 229, House Journal 807, and Senate Journal 949, 950, 55th G. A. (1953). "In each existing school district affected or portion thereof" was an amendment to House File 229 by the House Committee, adopted by the House by a large vote, and an attempt to strike it in the Senate failed by a narrow margin, thus clearly indicating that the legislature gave special attention to this language which clearly modified the provisions for separate voting in old sections 276.13–276.16, Code of 1950, from which it was originally taken.

See discussion in 39 Iowa Law Review 570, at 594. The author of this well-written article on Reorganization of Iowa School Districts concludes at page 596:

"Section 275.20 quite clearly requires a separate vote in each district or portion thereof affected if there is included in the proposed district a 'school corporation containing a city, town or village with a population of two hundred or more inhabitants.' "

Defendants argue that section 275.22 must be read in conjunction with section 275.20 and if plaintiffs' contention is correct then section 275.22 becomes meaningless. This conclusion is not sound. As was pointed out in 39 Iowa L. Rev., page 594, section 275.21 provides for a situation where separate voting only is required. In such instance section 275.22 is applicable and provides: "The judges of election shall provide separate ballot boxes in which shall be deposited the votes cast by the qualified electors *from their respective territories.*" (Emphasis supplied.) They are not meant to cover identical situations. In such instances as do not fall squarely under the provisions of section 275.20 previously related, central voting in separate ballot boxes is permitted. Such pronouncements are found in prior legislation which we have previously considered. Smaha v. Simmons, 245 Iowa 163, 60 N.W.2d 100; State ex rel. Little v. Owens, 244 Iowa 1356, 60 N.W.2d 521. It must be conceded the provisions of these two sections are not in conflict, for each requires separate ballot boxes for existing districts. Each may exist and perform a function, depending upon the composition of the proposed reorganization. 3 Drake L. Rev. 57, 67.

We do not know why the legislature decided to require separate voting in the districts in one case and not in another, but it is reason enough if the legislature in its wisdom decided in the situation set forth in section 275.20 that the voting places would be placed as close to the electors as possible. In general elections the places of voting are placed as close to the people as possible in wards and precincts, and it seems here some such idea was considered and expressed in this legislation. It is a sad fact that few people will travel far or exert a proper effort to exercise their rights of franchise even though it may concern them vitally. Thus it is seen the legislature had a definite purpose in the specific provision that the voting be held in each school district. Here the record discloses that it was about 12 miles from the farthest point in the proposed district to the voting places in St. Ansgar. Thus in the matter before us appears a substantial deviation from the statutory requirement, "in each existing school district."

Defendants further argue that such a provision was directional and, though violated by the officials, it is not fatal for

there is no showing anyone was harmed or was prevented thereby from casting his vote in the elections. We do not agree that such is the nature of this provision. As we pointed out in the recent case of State ex rel. Cox v. Consolidated Ind. Sch. Dist. of Readlyn, 246 Iowa 566, 68 N.W.2d 305, if the provision had been directional only, the legislature would not have given such clear and explicit command. We said therein at page 574 of 246 Iowa, page 310 of 68 N.W.2d:

"We do not deem the notices as merely 'informational.' They were, in the sense we have endeavored to define, 'jurisdictional.' Substantial compliance with the statute was a necessary condition precedent to the formation of a de jure school corporation under Code chapter 276, binding on all interested persons."

In that case, as here, it seems clear there was more than casual interest in the wording of the material section, for in prior sections of a like nature the legislature had not been so definite in setting out the requirements as to *where* they voted.

The statute being clear and admitting of only one meaning, we find no ambiguity or circumstance which logically tends to substantiate any other intent than that clearly stated. Thus it appears to us that the requirement as to where the ballot boxes were to be placed, i.e. "in each existing school district" as set forth in section 275.20 was mandatory and necessary to the consummation of the proposed consolidation.

■ II. The other principal question relating to whether the requirement that all territory in the reorganized district be contiguous is even more important. The trial court decided the only requirement of the present legislation was that the *proposed plan* disclose all the territory contiguous, and that if a sector was cut off by a rejecting connecting district or part thereof, the remaining territory, whether contiguous or not, could become a new corporation. We do not agree with this conclusion.

On various occasions in the past we have discussed the applicable meaning of the word "contiguous" as it relates to school legislation. Smith v. Blairsburg Ind. Sch. Dist., 179 Iowa 500, 506, 159 N.W. 1027, 1028. We said there:

"All essential is that the boundaries of the proposed district be indicated, and that the territory therein be contiguous.

"According to Webster's Dictionary, 'contiguous' means: 'In actual contact; touching; also near, though not in contact; neighboring; joining.'

"And the Century Dictionary defines the word as: 'Touching; meeting or joining at the surface or border; hence, close together; neighboring, bordering or joining; adjacent, as to two certain objects, houses or estates.'

"The evident design of the legislature was that the 16 or more sections composing the consolidated district should together *constitute an undivided or solid body of land.*" (Emphasis supplied.)

We held there if the territory included constituted "one body of land" the contiguous requirement of the legislation was met. Also see Zilske v. Albers, 238 Iowa 1050, 1058, 29 N.W.2d 189; 3 Drake L. Rev. 57, 69; and 1925-26 Attorney General's Opinions, page 70, where it was held only contiguous territory could form a school corporation.

Certainly back of such requirement is the history and logic of school reorganization. Consolidation from its beginning involved lands with a "common boundary" (now used in section 275.10) and "contiguous territory located in three or more school districts" (now used in Code section 275.11). The express policy of reorganization as set forth in Code section 275.1 is "to encourage the reorganization of school districts into such *units* as are necessary, economical and efficient * * *." (Emphasis supplied.)

The Iowa Legislature has consistently permitted *only* the organization of contiguous territory. For example, the Iowa Code section 1801 (1873) in providing for organization of urban independent districts, used the words "such contiguous territory as may best subserve the convenience of the people for school purposes." Also see Iowa Code Supplement (1907) sections 2794 and 2794(a) and Iowa Code Revision of 1860, chapter 89.

The court as well as the legislature has recognized this principle, one of the latest pronouncements being found in State ex rel. Little v. Owens, supra, 244 Iowa 1356, 1358, 60 N.W.2d 521, 522.

It is also a well-settled rule that courts do not favor repeal of established concepts by implication, and the legislature

in enacting what is now chapter 275 will not be presumed to have intended to overturn the long-established legal principle unless such intention is made to clearly appear by express declarations or by necessary implications. Smaha v. Simmons, supra, 245 Iowa 163, 168, 60 N.W.2d 100. Also see 50 Am. Jur., Statutes, sections 534 to 540, pages 539 to 546, and cases cited therein. No such intent or implication appears in this section or Act. In fact the intent seems otherwise.

Apparent reasons sustaining a desire for continued insistence on contiguity are persuasive. Among primary benefits to be gained by reorganization most often stressed are those of efficiency, economy, and a desire to avoid costly duplication. For example, a duplication of bus systems over and through a foreign territory to transport pupils would be extravagant and uncontemplated, to say nothing of a breach of established state departmental rules against such duplication of bus routes.

We are satisfied that the unit or one-body-of-land idea is basic in reorganization and it is inconceivable that the legislature could have intended by the words used here that no matter what separations or divisions occurred after the election, only a planned territory of contiguous territory was necessary. Hindman v. Reaser, supra. In view of this basic concept, any plan which provides a situation as found herein, where one district by rejecting the plan cannot only take itself out but also defeat the entire reorganization, should be avoided if possible by the county boards in considering, approving or submitting any reorganization proposal to the voters. Thus remains a subtle but firm legislative restraint upon unreasonable or unwise boundary determination by county boards.

It is true the legislature, while providing that any district which rejected the plan would not be included, said nothing about an approving district or portion thereof lying beyond it which thus becomes separated from the main body, but the concept of having several isolated and divided districts in a new reorganized and consolidated school district is so foreign to the whole plan of reorganization that if they were to be permitted in contravention of that concept, clear and unmistakable language would be necessary in new legislation. Such does not ap-

pear in this Act. On the contrary, the wording of Code section 275.11 is most pertinent, which provides:

"Subject to the approval of the county board of education contiguous territory located in three or more school districts may be *united* into a single district in the manner provided in sections 275.12 to 275.23 hereof." (Emphasis supplied.)

The conclusion is unescapable that uniting territory into one contiguous body of land is basic in our present school reorganization legislation, that the language of the statute is mandatory and must be followed to establish a de jure school district. Altman v. Independent Sch. Dist., 239 Iowa 635, 32 N.W.2d 392; State ex rel. Cox v. Consolidated Ind. Sch. Dist. of Readlyn, supra.

III. Other issues raised herein relating to the actual election are relatively unimportant and, in view of our conclusions above, need little discussion. They are not likely to occur in a subsequent reorganization effort. We agree with the trial court that the following irregularities are violations of directional provisions only. They are readily distinguishable from the mandatory and jurisdictional provisions discussed in Divisions I and II hereof. Plaintiffs' complaint of the aid given the aged voter by one election judge was not shown to be prejudicial in that no showing was made by anyone as to how she voted or as to whether or not her vote had been influenced by the aid given. True, such procedure by election judges is not in accordance with the law, but the rule is well settled that prejudice will not be presumed and a voter thereby disfranchised because of such an error by an election official. As to an irregularity of this nature, i.e., a breach of a ministerial duty, prejudicial result must reasonably appear, and its materiality must be shown and not left to mere surmise. While the vote in this district was 14 for, 13 against, and 1 spoiled ballot, the subject had signed the petition for the plan and in the absence of other proof could be presumed to be for it. We have often held the breach of a ministerial duty does not invalidate an election. For a pronouncement involving a similar ministerial duty to furnish separate ballot boxes, see State ex rel. Beu v. Lockwood, 181 Iowa 1233, at 1240, 165 N.W. 330, at 332 and cases cited.

The same rule is applicable to the issue that the election officials on the day of the election wrongfully changed the voting place from the place designated in the notice to the building next door. Here too there was no showing made that anyone was prevented from exercising his voting privilege by this change, and without such a showing this change alone would not constitute sufficient grounds for setting aside the election.

The rule as to such irregularities is amply covered in 18 Am. Jur., Elections, sections 224, 225, pages 330, 331, where it is said: "* * * that immaterial departures from the statutory mode of holding an election, when considered after an election, may be disregarded. If, however, the irregularities are so widespread and general and of so flagrant a character as to raise a doubt as to how the election would have resulted had they not occurred, they are deemed to be fatal and will warrant the rejection of the entire vote of the election district, unless it is possible to separate the illegal from the legal votes."

We are convinced the circumstances relating to the ousting of so-called checkers, whether justified or not, the aid to the aged voter, and the change of places to cast ballots, as disclosed by the record, do not disclose that there were material or widespread irregularities such as to avoid the vote in the districts concerned. See Independent Sch. Dist. of Liberty Twp. v. Independent Sch. Dist. of Clemons, 153 Iowa 598, 606, 134 N.W. 75, 77, and cases cited therein. We applied the rule to a school matter recently in Zilske v. Albers, supra, 238 Iowa 1050, 1056, 29 N.W.2d 189, 192, reasoning as follows:

"We have held emphatically that the statutes here in question are to be liberally construed. A majority of the electors in the territory involved has an absolute right to organize into a single district provided the territory sought to be consolidated is such as the statute contemplates. Courts will go no further than to see that the methods pursued are in substantial accord with those prescribed by statute [citing cases]."

Also in State ex rel. Ondler v. Rowe, 187 Iowa 1116, 1123, 175 N.W. 32, 34, we said: "* * * if such perfection of proceedings is to be demanded of them, few, if any, organizations of school districts could successfully withstand attacks at the hands

of discordant and contentious minorities. The courts very properly * * * go to the limit of liberality in giving effect to the voice of a majority, wherever it can reasonably be done without violence to the manifest spirit and intent of the legislature."

IV. What we have just said also applies, we think, to the plaintiffs' contention that, due to a mistake in preparing notices of the election whereby incorrect township names were added to certain correct governmental descriptions of included territory, such notices were fatally defective. Apparently no otherwise qualified voter in the territory included in the approved plan was refused a right to vote, and no voter was shown to have been misled by this error in the designation of the land involved. However this is an extremely close jurisdictional question. In this instance we are inclined to agree with the trial court that it was not a substantial or material departure from the statutory requirements; and at least it will not likely be repeated hereafter. However, as bearing upon this question, see our recent pronouncement in State ex rel. Cox v. School District of Readlyn, supra; Harbacheck v. Moorland Telephone Co., 208 Iowa 552, 226 N.W. 171; State ex rel. Odekirk v. Peterson, 199 Iowa 52, 201 N.W. 71.

V. Plaintiffs also argue that a member of the county board who was disqualified as a resident of the proposed district presided at the first meeting. Section 275.17. Though it is true he presided at that meeting, we are satisfied the trial court was correct in holding the facts disclosed he took no part in the deliberations on the establishing of the boundaries or in passing upon objections, and that no substantial or material violation of the mandatory requirement of section 275.17, Code of Iowa 1954, appeared.

VI. Plaintiffs' final contention was that the trial court erred in striking Division II of their petition asking that the constitutionality of chapter 275, Code of Iowa 1954, be determined. The constitutional question, of course, is not determinative of the appeal in view of our holdings above, and perhaps we should not consider that question here. It will suffice to say that we fail to find herein any acts of discretion or of abuse of discretion by the board which would lead to the conclusion that

the Act itself conferred unconstitutional authority to the county school boards. We have suggested otherwise in Division II hereof.

Having decided under Divisions I and II that there are substantial deviations from the mandatory statutory requirements such as to effect the jurisdiction thereof, we conclude the Community School District of St. Ansgar was not legally established and has no de jure existence.—Reversed.

All JUSTICES concur.

### SUPPLEMENTAL OPINION

PER CURIAM—The above matter having come before this court upon the application of the appellees for certain orders in the nature of a petition for rehearing, the opinion previously filed herein is supplemented by adding thereto the following:

This cause is remanded to the District Court of Mitchell County, with directions that it permit the appellee school district as a de facto school corporation to operate the schools involved in this case during the school year of 1956-1957, and the operation of said schools by said de facto corporation is to be approved by said court.

Said court shall also take proper steps to dissolve said de facto corporation as of the end of said school year, and in any event not later than July 1, 1957, under the statutory provisions for such dissolution and according to law.