HAROLD HONOHAN et al., appellants, v. UNITED COMMUNITY
SCHOOL DISTRICT OF THE COUNTIES OF BOONE AND
STORY et al., appellees.

No. 51854.

(Reported in 137 N.W.2d 601)

58

October 19, 1965.

Cudahy & Wilcox, of Jefferson, for appellants.

Mahoney, Jordan, Statton & Smith, of Boone, for appellees.

RAWLINGS, J.—This is an appeal by plaintiff taxpayers from decree by trial court refusing to enjoin sale of bonds by defendant school officials.

The only issue presented is as to the validity or legal sufficiency of the school bond election ballot used. Therefore a detailed factual dissertation as to preliminary procedural steps involved is, for the most part, unnecessary.

Petitions were duly filed proposing issuance of bonds for the purpose of constructing a *schoolhouse*. A school board meeting was held as a result of which there was adopted a resolution calling for an election on the following proposition:

"Shall the United Community School District in the Counties of Boone and Story, State of Iowa, issue bonds in the amount of $700,000 for the purpose of building and furnishing a *new schoolhouse* and procuring a site therefor in and for said school district?" (Emphasis supplied.)

Notice of election was given accordingly.

At all times prior to the election discussions centered on the proposed construction of a new school building to house grades five through twelve, and possibly kindergarten through the twelfth grade. This, for brevity, is sometimes hereinafter referred to as the plan.

The school board prepared and circulated pamphlets urging approval of the plan. Those opposing the proposal prepared and distributed leaflets urging defeat of the plan. An editorial and news articles appeared in a local paper, all concerning the plan.

Mention was never made of a new senior high school. However, the ballot ultimately used for the election was in the following form:

"Shall the United Community School District in the Counties of Boone and Story, State of Iowa, issue bonds in the amount of $700,000 for the purpose of building and furnishing a *new senior high school building* and procuring a site therefor in and for said district?" (Emphasis supplied.)

For our purpose it is immaterial that no one appears able to explain the self-evident variance between the plan or proposal, and the ballot.

On December 14, 1964, an election was held. There were 839 ballots cast of which 550 were in the affirmative, 279 were in the negative, and 10 were defective. The proposition was then declared to have carried.

Plaintiffs contend the variance between proposal and ballot is one of substance fatal to the election, and the bonds cannot lawfully issue. Defendants claim the error is a minor irregularity and did not adversely affect the election. As is usual in school controversies, the battle lines are thus drawn.

I. As a general rule mere irregularities in the conduct of a school election or minor defects in the form of a ballot do not affect the result of the election, but defects in matters of substance are fatal. Headington v. North Winneshiek Community School District, 254 Iowa 430, 117 N.W.2d 831, and 29 C. J. S., Elections, section 173(2)b, page 482. Also, there must be substantial compliance with specific requirements as to form and content of ballots, since they are mandatory. McLaughlin v. City of Newton, 189 Iowa 556, 562–565, 178 N.W. 540; O'Keefe v. Hopp, 210 Iowa 398, 405, 230 N.W. 876; Pennington v. Fairbanks, Morse & Co., 217 Iowa 1117, 253 N.W. 60; State ex rel. Warrington v. Community School District of St. Ansgar, 247 Iowa 1167, 1174, 78 N.W.2d 86; and 29 C. J. S., Elections, section 173(2)b, page 483.

So, we are confronted with the rather difficult task of determining whether the self-apparent variance between proposal and ballot was a minor irregularity or a fatal defect of substance. We find there was such a radical failure to substan-

tially comply with the law as to lead to the conclusive presumption that damage, detriment and prejudice unavoidably followed.

II. Since the relevant statutes are clearly our lodestar, it is essential we quote them at length. They are as follows:

"296.2 Petition for election. Before such indebtedness can be contracted in excess of one and one-quarter percent of the assessed value of the taxable property, a petition signed by a number equal to twenty-five percent of those voting at the last [regular school election] shall be filed with the president of the board of directors, asking that an election be called, stating the amount of bonds proposed to be issued and the purpose for which the indebtedness is to be created, and that the necessary school-house or schoolhouses cannot be built and equipped, or that sufficient land cannot be purchased to add to a site already owned, within the limit of one and one-quarter percent of the valuation."

"296.4 Notice—ballots. Notice of such election shall be given by publication once each week for four weeks in some newspaper published in the district, or, if there is none, in some newspaper published in the county and of general circulation in the district. The notice shall state the date of the election, the hours of opening and closing the polls and the exact location thereof, and the questions to be submitted, and shall be in lieu of any other notice, any other statute to the contrary notwithstanding. At such election the ballot shall be prepared and used in substantially the form for submitting special questions at general elections."

"49.43 Constitutional amendment or other public measure. When a constitutional amendment or other public measure is to be voted upon by the electors, it shall be printed in full upon a separate ballot, preceded by the words, 'Shall the following amendment to the constitution (or public measure) be adopted?'

"49.44 Form of ballot. Upon the right-hand margin, opposite said words, two spaces shall be left, one for votes favoring such amendment or public measure, and the other for votes opposing the same. In one of these spaces the word 'yes' or other word required by law shall be printed; in the other, the word

'no' or other word required, and to the right of each space a square shall be printed to receive the voting cross.

"49.45 General form of ballot. Ballots referred to in sections 49.43 and 49.44 shall be substantially in the following form:

" 'Shall the following amendment to the YES ☐
constitution (or public measure) be NO ☐
adopted?'

"(Here insert in full the proposed constitutional amendment or public measure.)"

Taking these legislative enactments in order, we find, by section 296.2, the specific condition that before a school district may incur indebtedness for designated purposes, a petition must be filed, specifying among other things *the purpose for which the indebtedness is to be created.* In the case at bar the purpose was to construct a new schoolhouse.

Turning then to section 296.4, we find the notice of election to be posted must state, among other things, *the question to be submitted.* Again, the question to be submitted was whether a new schoolhouse should or should not be built.

Referring now to section 49.43, it is specifically provided, where a *public measure* is to be voted upon, it shall be stated in full.

Then section 49.44 requires a ballot on which those voting for and those voting against *a public measure* may express their desires.

And, section 49.45 follows through by providing the form of the ballot on *a public measure.*

Here again, it should be noted the subject petition to call an election, and notice of election, had for their clearly express purpose or public measure the construction of a new schoolhouse, not the construction of a new senior high school.

■■ And since the legislature saw fit to require the "purpose" of the petition for election, and the notice of election of such "purpose", be declared, this legislative mandate cannot be construed to be directory. State ex rel. Warrington v. Community School District of St. Ansgar, 247 Iowa 1167, 1174, 78 N.W. 2d 86, and Hansen v. Henderson, 244 Iowa 650, 665, 56 N.W.2d

62

59. We conclude these legislative requirements have meaning and purpose, and are mandatory.

 Now we refer again to sections 49.43, 49.44 and 49.45 which require the *public measure* voted on be set forth in full on the ballot. What public measure? The only reasonable answer is, the public measure or question to be submitted as set forth in the petition for election and notice of election. These requirements are also clearly mandatory. State ex rel. Warrington v. Community School District of St. Ansgar, McLaughlin v. City of Newton, O'Keefe v. Hopp, and Hansen v. Henderson, all supra.

 While the public measure need not always be set forth "in haec verba", there must still be substantial compliance with the relevant statutes. Such compliance with express statutory requirements was totally lacking in the case before us.

III. In connection with the foregoing the terms "schoolhouse" and "senior high school" are not synonymous. The former may include the latter, but the latter does not necessarily include the former. When referring to structural types, the term "schoolhouse", without further delineation, usually embraces all school grades, elementary through high school. However, the term "senior high school" denotes nothing more than the ninth through twelfth grades. See Wilds v. School District, 336 Pa. 275, 9 A.2d 338, and Graham v. Board of Education, 153 Kan. 840, 114 P.2d 313.

It is therefore self-evident the people were compelled to vote on the senior high school proposal which had not been presented to the school board by any petition, had not been set forth in any notice of election, and as far as the record discloses had never been heard of, known to or considered by the people of the United Community School District prior to the challenged election.

This is a far cry from minor, technical or insignificant errors. We are not here dealing with color, texture, or initialling of ballots, voting places, number of judges or clerks, irrelevant errors in description of property, imperfectly marked ballots, and similar minor defects as to form or procedure. In the case at bar the blatant error goes to the very heart and soul of the

election. So Headington, the cases therein cited, and others of a similar nature are easily distinguished from the case now before us.

IV. In this case little or nothing is to be gained by indulging in any speculative processes. Our task has been to view the problem presented within the narrow confines of the date of election and form of the ballot then used. This we have done.

The purported election held December 14, 1964, was a nullity, and no school bonds can lawfully issue by reason thereof.

The decree entered by the trial court dismissing plaintiffs' petition, denying a writ of injunction restraining issuance of bonds, and any further proceedings in connection therewith, including execution of any agreement for sale of bonds here concerned, was and is contrary to law.

Reversed and remanded for decree consistent herewith.

All JUSTICES concur.