STATE OF IOWA, ex rel. M. M. ONDLER, et al., Appellants,
v. C. N. ROWE et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Consolidated Districts—
1 **Omission of Territory—Effect.** The act of a school board in *omitting* from the notice of an election to vote on the establishment of a consolidated school district a small fraction of the territory described in the petition, did not render *illegal* the subsequently organized district, when such omission was in manifest good faith, and in accord with an informal agreement, publicly acquiesced in, that such omission should be made.

**SCHOOLS AND SCHOOL DISTRICTS:** Consolidated Districts—
2 **Jurisdiction—Remedy for Irregularities.** Jurisdiction of the proper board of directors to call an election for the establishment of a consolidated school district attaches when the petition, approved by the county superintendent, and purporting to be signed by the required electors, is filed with the board; thereafter, *material irregularities in the exercise of such jurisdiction should be corrected by appeal, and not by quo warranto.* (See Ch. 432, Acts 37 G. A., for change in statute.)

**SCHOOLS AND SCHOOL DISTRICTS:** Consolidated Districts—.
3   Qualified Approval by Superintendent. A county superintendent,
    under Sec. 2794-a, Code Supp., 1913, as it existed prior to Ch.
    432, Acts 37 G. A., had no power to *qualify* his approval of a
    petition for the creation of a consolidated district.

**QUO WARRANTO:** Laches as Defense. Principle recognized that
4   lack of diligence in bringing quo warranto to test the legality
    of a *public* corporation may be fatal.

*Appeal from Linn District Court.*—F. F. DAWLEY, Judge.

DECEMBER 13, 1919.

THIS is a proceeding in the nature of quo warranto,
to test the right of defendants to hold the office of school
director of the consolidated independent district of Troy
Mills. Judgment was entered dismissing plaintiff's peti-.
tion. Plaintiff appeals.—*Affirmed.*

*F. L. Anderson* and *R. J. O'Brien,* for appellants.

*Treichler & Treichler,* for appellees.

WEAVER, J.—Early in the year 1915, a movement was
begun to organize a consolidated school district, to include
territory theretofore constituting two independent districts

1. SCHOOLS AND
SCHOOL DIS-
TRICTS: con-
solidated dis-
tricts: omis-
sion of terri-
tory: effect.

in Buchanan County, together with a por-
tion of Spring Grove Independent District,
and all of three other independent districts
in Linn County. Among those districts was
one known as Troy Mills, to which further
reference will be made. Proceeding under the statute,
Section 2794-a, Code Supplement, 1913, as it then stood, a
petition was prepared and signed by the requisite number
of electors. It was also endorsed by the county superin-
tendent of Linn County, with an approval in the following
form:

"CERTIFICATE OF APPROVAL.

"The above petition and certificates of proposition,

found to be sufficient as per Section 2794-a, is approved, with the understanding that the Spring Grove Independent District be divided as per agreement between the Troy Mills board and the people who live outside of Spring Grove District and the proposed Consolidated Troy Mills District. Same to be decided at a meeting to be held at Troy Mills, Wednesday evening, April 7, 1915."

The record at this point is not entirely clear, but it is inferable therefrom that there was no formidable or serious objection to the consolidation, except in the included part of Spring Grove District, and that the addendum to his approval of the petition was made by the superintendent of Linn County, with a view to placate or avoid the opposition so arising. On the date named by the superintendent, a meeting was held at Troy Mills, which appears to be the most populous of the several districts, and the nucleus of the consolidation. The meeting was attended by many electors of Spring Grove, and the board of directors of Troy Mills, and probably others in interest. After discussion, it seems to have been proposed to solve the difficulty by dropping the designated territory in Spring Grove from the proposed consolidation. This was agreed to, the representatives from Spring Grove expressing their assent in writing. Thereupon, the petition was again presented to the superintendent of Linn County, and he endorsed his approval thereon in writing. It also received the written approval of the superintendent of schools in Buchanan County. As thus completed, the petition was filed with the Troy Mills Board of Directors, together with a plat or map of the proposed consolidated district, including within its boundaries all of the territory originally proposed therefor, except that part in the district of Spring Grove.

The board, having received these papers, proceeded to give notice of an election upon the question so presented. This notice did not mention the Spring Grove territory as

being included in the proposed consolidation, and the people of that independent district took no part in the election, nor has that district nor any of its electors taken any part in subsequent litigation attacking the validity of the consolidation. The election was attended generally by the electors of the five independent districts described in the notice, who sustained the project by a substantial majority. In due course thereafter, an election was called and held, to complete the organization of the consolidated district by the election of a board of directors, as by statute provided. At said election, two or more of the persons who appear as relators in this suit were unsuccessful candidates for a place on the board. No attempt was made to test the legality of the organization until in October following. Meantime, it was the effect of the consolidation, if valid, to render void all taxes previously certified, so far as the property within the limits of the consolidated district is concerned, and it had become the duty of the newly elected board to perfect its organization before the first day of July of that year; also, to levy taxes for the general fund and other necessary school purposes before the third Monday in August,—duties which, we must presume, were duly performed. Section 2794-a, Subdiv. b, Code Supplement, 1913. A schoolhouse was secured in Troy Mills, teachers were employed, and arrangements made for the transportation of pupils, as provided by law.

Thereafter, in October of that year, as above suggested, certain persons alleging themselves to be taxpayers in the district brought a suit in equity to have the organization adjudged illegal and void, and to enjoin its directors and officers from assuming to act in such capacity. The litigation thus begun leisurely took its way through the court below, and finally to this court, where, two years later, it was decided that the legality of the organization of a corporation cannot be determined in an equitable action for

injunctive relief, and that an action in the nature of quo warranto affords the exclusive remedy. See *Nelson v. Consolidated School District,* 181 Iowa 424. When that case had been finally disposed of, as above indicated, and when the consolidated district had been organized and had been exercising the functions of a school corporation for more than two years, the present action was instituted. The trial court found for the defendants, and plaintiffs appeal.

Aside from the alleged defects hereinafter specifically considered, the regularity and propriety of the proceedings culminating in the organization of the consolidated district are in no manner challenged or denied. Reduced to brief terms, the point relied upon is that the petition for the calling of the election, in the form in which it was signed by the electors, described the proposed consolidated district as including, with other territory, the independent district of Spring Grove, or some part thereof; that such was, in fact, the form of the petition filed with the board of directors of the Troy Mills district, but the notices of election departed from that description by leaving out the Spring Grove district, and it was this amended or substituted description which was approved and upheld by the vote for consolidation. In other words, it is contended that, if the board of directors acquired any jurisdiction or right to call an election on the question, it was the question of consolidating the territory originally described in the petition, and that the omission of the Spring Grove territory in the subsequent proceedings renders them absolutely void. Stated still otherwise, it is said that the vote to consolidate the territory not including Spring Grove is utterly nugatory, because there was no petition before the board asking for such an election.

I. Let us first inquire when the jurisdiction of the "board of directors of the school corporation having the largest number of voters" attaches, for the purposes of an

2. SCHOOLS AND
SCHOOL DIS-
TRICTS: con-
solidated dis-
tricts: juris-
diction: remedy
for irregulari-
ties.

election upon the subject of territorial consolidation, as provided in Section 2794-a, Code Supplement, 1913. This is clearly indicated in the language of that section to be when the petition asking such election, approved by the county superintendent, and purporting to be signed by a sufficient number of electors, is presented to that body for its action. Such is not only the natural import of the legislative language, but this court has so interpreted it, on repeated occasions. In *School Corporation v. Independent School Dist.*, 162 Iowa 257, there was a petition for an election to organize an independent district, and a second petition by voters from contiguous territory to be included therein. The board sustained and acted upon both petitions. It being sought to invalidate the organization on the ground that the second petition was not signed by the required number of voters, and therefore the board acquired no jurisdiction to proceed, we said:

"We have frequently held in similar cases that the jurisdiction of the board attached by the presentation of the first petition, and that it devolved on the board to canvass the second petition and to ascertain whether or not it contained a majority of the voters, as provided by statute. If it erred in its conclusion, its jurisdiction was not thereby defeated."

Quite in point, in many respects, is the case of *Smith v. Blairsburg Ind. School Dist.*, 179 Iowa 500. There, the petition for an election to organize a consolidated district described in detail, according to government survey, a large number of tracts of land, and its prayer was "that all the territory situated within the limits herein described be organized into one consolidated independent district," and that an election be called accordingly. The petition was addressed and presented to the board of the independent dis-

trict of Blairsburg. That board, acting upon the petition, called an election, and, in its notices of the election, described the territory specifically mentioned in the petition, but added thereto the words, "and embracing the independent school district of Blairsburg in said county." Now the petition did not, in its description of the proposed consolidation, mention the Blairsburg district by name, nor did it describe any of the land or territory within such district; but it appearing that the body of land actually described was contiguous to said district, and the petition being addressed and presented to its board, it was held that the intent of the petitioners to include the district within the proposed consolidation could properly be inferred, and its consolidation with the territory actually described would be sustained. In the same case, an attack was also made upon the petition on the ground that a part of the signers of the petition were not qualified electors and that, of the qualified electors, less than one third were among the signers, and that, for this reason, the board did not have jurisdiction to call the election. This objection we refused to consider, saying:

"It was the filing of the petition that conferred jurisdiction, and thereupon, the board's duty was to canvass the signers, and ascertain whether one third of the resident qualified electors had signed. If the board erred therein, anyone aggrieved thereby might appeal from the decision to the county superintendent, and if his decision was adverse, then to the state superintendent. Sections 2818, 2820, Code. This would seem a plain, speedy, and adequate remedy, and, if so, certiorari proceedings would not lie to review the board's findings, at least until the remedies provided by appeal have been exhausted. * * * No appeal having been taken in this case, the finding that one third of the resident qualified electors signed the petition is conclusive."

This precedent illustrates the liberality of construc-

tion which the court will indulge to carry out the intent of the people whose purposes and needs are to be served. If the territory sought to be consolidated into a single district is such as the statute provides for, the right of the people resident therein, speaking by a majority of its electors, to organize themselves into a single district is absolute, and the extent to which the courts will assume to control their action goes no further than to see that the methods pursued to that end are in substantial accord with the prescribed statutory regulation of the manner in which their wishes are to be expressed. The right thus provided is intended for the benefit of rural communities, whose people and officers are not lawyers, and cannot be expected to observe each and every successive step with technical nicety; and if such perfection of proceedings is to be demanded of them, few, if any, organizations of school districts could successfully withstand attacks at the hands of discordant and contentious minorities. The courts very properly bear this situation in mind, and go to the limit of liberality in giving effect to the voice of a majority, wherever it can reasonably be done without violence to the manifest spirit and intent of the legislature.

Following that rule, it is seen that, in the last cited case, we held that the organized consolidation included the territory of an entire independent district not described in the petition at all, because, taking all the circumstances together, the court was convinced that the inclusion of that district was intended. In so holding, we said, in words not inappropriate to the instant case:

"This construction is not entirely inconsistent with the language of the statute, and must have been apparent to the board of directors addressed, and to the county superintendent. If the petitioners, the board, and the county superintendent so construed the petition, as they certainly did, it accomplished its purpose. That it was rightly construed

as including the territory of the independent district *derived some support from the fact that otherwise the whole proceeding would have been nugatory."*

Many other citations of authorities to the same effect could be made, but we content ourselves with a single reference to the case of *Independent School Dist. v. Independent School Dist.*, 153 Iowa 598, where the proceedings for organizing a new district in territory taken from several others were marked with very numerous irregularities in the petition for the election, in the election notices, and in the manner of holding the election; but we held that the real intent, as manifested by the record as a whole, was lawful, and that such intent should be given effect, saying:

"We see no reason for not giving to the ballot an interpretation which would carry out the plain intent of the voters."

The foregoing reference to the general intent and purpose of the statute and to the attitude of the courts in conserving and promoting such purpose affords, in our judgment, an appropriate introduction to our own consideration of the merits of the present controversy. That the territory described in the petition for an election, as first prepared, was such as could properly have been consolidated under the statute providing for such districts, is not disputed. The same may also be said of the same territory, when diminished by the exclusion of the part in Spring Grove district. It does not appear from the record whether the first, or so-called qualified, approval by the Linn County superintendent was made before or after the petition had been signed by the electors. In the *Blairsburg* case, above cited, it was held immaterial whether the approval was procured before or after the signatures had been obtained. Nor does it appear whether the second, or unqualified, approval by that officer was endorsed upon the petition before or after it had been filed with the board; and, for reasons which we

will endeavor to state, we think this is not an inquiry of vital importance.

The function and authority of the superintendent in such cases, as the statute then stood, was simply to say whether, in his official judgment, such a district as therein described "should be organized at all."

3 SCHOOLS AND SCHOOL DISTRICTS: consolidated districts: qualified approval by superintendent.

(*Blairsburg* case, supra). He could veto or block the organization by refusing his approval, or he could approve it and permit the voters to express their wishes at an election for that purpose. In short, it was for him to say "yes" or "no," neither more nor less. If contention arose over the proposed organization, he could, of course, if so minded, withhold official action, while he acted as an unofficial mediator or adviser to adjust the differences; but he could not endorse the petition with his official approval, and then detract from its legal effectiveness by requiring the petitioners to go out and compose their differences with some particular person or persons, or by arranging for the exclusion of some part of the designated territory. For the purposes of this case, therefore, the addendum made by him to his first certificate of approval is to be treated as surplusage, or, at most, an advisory suggestion. It follows, of necessity, that, upon the filing of the petition, whether then endorsed by one or both of the approvals by said superintendent, the board of directors did acquire jurisdiction to proceed to call an election and organize the consolidation, subject to the right of any party aggrieved to appeal to the county superintendent, from whose decision, if unfavorable, a further appeal would lie to the state superintendent. (See precedents above mentioned, and other cases therein cited.)

Jurisdiction having been once acquired, irregularities in subsequent proceedings, if of material character, are errors which may be corrected on appeal, as just stated, but

they are not defects which justify the courts in interposing by certiorari, injunction, or quo warranto to declare the incorporation void and of no effect, or (in the language used by us in the *Blairsburg* case) "until the remedies provided by appeal have been exhausted." But appellants object that the omission from the election notice of the fraction of territory in Spring Grove is such a serious departure from the description of the consolidation proposed in the petition that we ought to say the election was called without any petition on which to base it, and that the board was, therefore, without jurisdiction. But this, we think, is an unnecessarily narrow view of the situation. All the territory described in the notices of election was included in the petition, and nothing was omitted therefrom except a small fraction of the area where the voters were opposed to uniting in the new organization, and had obtained an informal agreement for its exclusion from the consolidation. That agreement may, for the purpose of this case, be conceded to have been without binding legal force or effect upon anyone; but it appears to have been acted upon.

The people of the excluded part, as we have before noted, accepted it as final, and took no part in the election, and are claiming no rights under the consolidation. On the other hand, no protest appears to have been made by those living in the proposed district as thus slightly diminished in area, and they proceeded to hold an election, without manifesting any objection to the comparatively unimportant change thus effected in the boundaries. More than this is the important fact that, filed with the petition, was a plat of the proposed consolidated district, omitting from its boundaries the territory in Spring Grove, and including therein the territory as described in the notices of election; and it is at least a fair question whether the board might not, in good faith, construe the petition and plat together, and therefrom, and from their general knowledge of the sit-

uation, construe the application as one for the consolidation of the platted territory. That the great body of the voters taking part in the election did not know and understand the exact situation, or that any of them supposed the Spring Grove territory was being included in the consolidation, is quite incredible. If there is any one thing in which the average voter in rural districts takes an active interest, it is in matters pertaining to the public schools. He is peculiarly sensitive to any movement or proposal to build a new schoolhouse, or to change the location of its site, or to any re-organization or change of district lines. The subject is one discussed at the fireside and wherever people of the neighborhood meet; and, if there be any material division of sentiment, they are never slow in arraying themselves on one side or the other. The proceedings for the organization of this consolidated district could not have been transacted "under a bushel." The circulation of the petition must inevitably have given it publicity at the outset; the objections raised by Spring Grove neighborhood, the attempt to compromise that antagonism, and the method adopted for its adjustment must have challenged public attention; and the notices of election made it entirely clear to every voter that the question on which he was invited to cast a vote was the incorporation of a district not including Spring Grove; and, so far as the record shows, no word of opposition was raised nor any question made of the regularity of the organization until months after it had been completed and it was in full exercise of its powers, a going, *de facto* school corporation.

It can hardly be questioned, we think, that, after the informal agreement to exclude Spring Grove territory from the consolidation, it would have been entirely competent for the petitioners to have agreed to let the petition stand, as being for the consolidation of the remaining territory; and, upon a declaration made to the board, that body could prop-

erly have proceeded to call an election accordingly. And this, we are disposed to hold, is what, in legal effect, was done, though not accomplished with formal regularity. That the board acquired jurisdiction to act by the original filing of the petition cannot be doubted, and that the board, the petitioners, and the voters intended by the subsequent proceedings to do exactly what they did do, intending thereby to accomplish the consolidation of the territory, less the fraction in Spring Grove, believing, in good faith, that they were keeping within the requirements of the law, is very certain. Now, if we were right in the *Blairsburg* case, in holding that the good faith and clearly indicated purpose of all concerned were sufficient to purge a like proceeding of the irregularity by which there was included in the election notice an entire school district not expressly mentioned or described in the petition, because such inclusion appears to have been intended by the parties concerned, it seems quite certain that we cannot be wrong in this case in giving effect to the manifest intent of all parties there concerned to omit from the consolidation a small fraction of a single district which did not object to the exclusion, and presumably is still satisfied therewith.

The rule that, where jurisdiction to call an election has once attached, subsequent mistakes and irregularities in the manner and method of the call made and election held do not oust the jurisdiction, and that errors so committed are to be corrected by appeal, if an appeal has been provided for, is too thoroughly established to justify further discussion along this line. *Ryan v. Varga,* 37 Iowa 78; *Dishon v. Smith,* 10 Iowa 212, 217; *Page County v. American Emigrant Co.,* 41 Iowa 115; *Farrington v. Turner,* 53 Mich. 27 (18 N. W. 544) ; *Baker v. Board,* 40 Iowa 226; *Bennett v. Hetherington,* 41 Iowa 142; *Munn v. School Twp.,* 110 Iowa 652; *Oliver v. Monona County,* 117 Iowa 43; and other cases already cited.

II. Defendants also plead and rely upon the alleged laches of the plaintiffs in instituting this proceeding. In view of the conclusion reached in the preceding paragraph of this opinion, a decision of this question becomes unnecessary. The organization of this district, whether regular or irregular, was effected early in May, 1915, and this action was not begun until in October, 1917, although it was preceded by an unsuccessful suit in equity to have the organization adjudged invalid.

4. QUO WARRAN-
TO: laches as
defense.

It is doubtless the rule that assault by quo warranto upon the organization of a corporation must be begun with reasonable promptness, to avoid the defense of laches. Whether, under the peculiar circumstances of the present case, the delay was unreasonable, we express no opinion; but it was sufficient, at least, to give additional emphasis to the language quoted approvingly by this court from *Clement v. Everest,* 29 Mich. 19, in disposing of the appeal in the injunction case, *Nelson v. Consolidated Ind. Sch. Dist.,* 181 Iowa 424, as follows:

"In such matters as concern the public, and do not interfere with private property or liberty, such action as creates municipal bodies and gives them corporate existence cannot be questioned without creating serious disturbance. If the regularity of their organization can be kept open to question indefinitely, no one could ever be sure that any of the taxes or other matters concerning his town were valid, and the whole public business might be blocked by litigation. There are some matters affecting private rights which are scrutinized strictly, because no one can be deprived of private rights without conformity to law. Where one man's property is taken for public purposes without his consent, the taking must be justified by regular action. But where the organization of a local corporation, as a town or district, is left to the will of any particular body

of electors or officers, and they proceed to execute their powers and complete the organization, their executed will ought to stand, if there has been a substantial compliance with the policy of the law giving them jurisdiction. Every presumption is to be made in favor of the regularity of such action, and where there is a valid law, and an organization under it which proceeds from the lawful agencies, it should be regarded as entitled to legal standing, unless measures are speedily taken to assail such action by some competent authority."

The judgment of the trial court is well supported by the record, and it is—*Affirmed.*

LADD, C. J., EVANS, GAYNOR, PRESTON, and SALINGER, JJ., concur.