E. J. Willis et al., Appellants, v. Consolidated Independent School District of Cromwell, Appellee.

No. 39801.

November 21, 1929.

Rehearing Denied April 16, 1930.

Camp & Camp and *Kenneth H. Davenport*, for appellants.

*O. M. Slaymaker* and *R. E. Killmar*, for appellee.

STEVENS, J.—The Consolidated Independent School District of Cromwell is a school corporation lying partly in Union and partly in Adams County. On June 16, 1928, pursuant to a call issued by the county superintendent of Union County, in which the larger number of qualified electors reside, an election was held, to vote upon the proposition: ''Shall the Consolidated Independent School District of Cromwell be dissolved?'' The proposition failed to carry. An appeal was taken by contestants to the district court, with the result that certain votes counted in the election were rejected, and one vote that was rejected, counted. This result gave 143 votes in favor of dissolution and 144 against it. In view of the conclusion reached, some of the propositions discussed by counsel need not be considered.

I. The votes of Frank V. Sparr, George Hartman, and James J. Walsh were held by the court below to have been illegally cast. Sparr testified that he voted against the proposition for the dissolution of the district. Hart-man and Walsh testified that they each voted in favor thereof. The court held that none of the three parties named were qualified electors, for the reason that they were nonresidents of the district. Hartman was, we think, clearly a nonresident of the district. He admitted that he voted in Creston at the primaries preceding the election. He was employed for a short time by a farmer residing within the district, to plow corn. He quit work and returned to Creston shortly after the election. Sparr was employed by his brother at Cromwell. He lived at a hotel in Creston, going to Cromwell and working during the day. On May 28th, 18 days before the election, at the request of his brother, he went to Cromwell, secured a room, and lived there until July 30th, when he returned to Creston. He testified that his brother paid the room rent. It is true that he testified to the conclusion that he went there in good faith, expecting to make Cromwell his home. The weight of the evidence on this point is against this claim.

Testimony as to the residence of Walsh is more indefinite and unsatisfactory than that of the other parties named. Walsh's father owns a farm in the district, and resides in Creston. Walsh is unmarried, and generally sleeps in Creston. He was unable

to remember whether he voted at the primary election in 1928. He had not, for some time prior thereto, been staying on the farm. The explanation tendered is that the tenant's wife was not in good health, and preferred that he sleep in town. Walsh does not claim to have ever voted in the district, but admitted that he has voted in Creston at special elections. We are not disposed to interfere with the finding of the trial court at this point.

Some reliance is placed by counsel for appellants upon *Powers v. Harten*, 183 Iowa 764. The facts as to the several parties named do not bring them within the holding in that case. Manifestly, where so much depends upon the intention of the citizen, it is frequently difficult to determine questions of residence. The testimony, however, in this case, when viewed in the light of the circumstances, leaves no reasonable doubt that the votes cast by the above-named citizens were illegal.

II. The votes of Mary J. Bayles, Sallie Walker, and Sarah E. Archer were also challenged by appellants. As to Mrs. Bayles and Mrs. Walker, we deem it unnecessary to discuss the testimony. They are widows, who spend considerable time outside of the district, visiting members of their respective families. Both their testimony and the circumstances show quite clearly and satisfactorily that they are residents of the district. By this we do not mean to say that the testimony is all one way. It is not. But when it is carefully weighed as a whole, we think the conclusion reached by the trial court that they were qualified electors residing in the district is correct. Both Mrs. Bayles and Mrs. Walker voted against the dissolution of the district.

III. The legality of the vote cast by Sarah E. Archer, under the provisions of the absent voters' law, is challenged by the appellant, upon the ground that the county superintendent, who furnished her the ballot, upon application therefor, acted without authority. The material provisions of Chapter 44, Code, 1927, relating to absent voters, are as follows:

"927. Any qualified voter of this state may, as provided in this chapter, vote at any general, municipal, special, or primary election, or at any election held in any independent town, city, or consolidated school district:

"1. When, through the nature of his business, he is, on election day, absent from the county in which he is a qualified voter, or when he expects, in the course of said business, to be so absent.

"2. When, through illness or physical disability, he is prevented from personally going to the polls on election day and voting.

"928. Any voter, under the circumstances specified in the preceding section, may, on any day not Sunday or a holiday and not more than twenty days prior to the date of election, make application to the county auditor, or to the city or town clerk, as the case may be, for an official ballot to be voted at such election.

"929. In the application of this chapter to elections held in independent city, town, and consolidated school districts, the secretary of the school board shall perform the duty herein imposed on the county auditor or clerk of the city or town."

The election to vote upon the proposition to dissolve the Independent Consolidated School District of Cromwell was called by the county superintendent, and held in obedience to and in conformity with the provisions of Chapter 209 of the Code. Petitions both for the establishment and for the dissolution of consolidated independent school districts must be filed with the county superintendent. Sections 4155 and 4188.

The statute relating to absent voters does not, in specific terms, refer to elections called by the county superintendent for the purpose of determining whether a consolidated district shall be established, or an existing one dissolved, nor is the county superintendent designated as the officer to receive applications therefor and to issue official ballots to such voters. The statute does, however, as will be observed from the portion quoted above, make the absent voters' law applicable to elections held in "any independent town, city, or consolidated school district." The application by an absent voter for an official ballot to be cast at an election held in an independent consolidated school district must be made to the secretary of the school board. The election in question was held in the consolidated district,—that is to say, within the physical boundaries thereof. Likewise, elections called by the county superintendent to vote upon a proposition for the establishment of a consolidat-

ed district are held within the boundaries of the proposed district. An election called to vote upon a proposition for the establishment of a district necessarily precedes the election of a school board and a secretary thereof. At the time such election is held, there can be no such officer as secretary of the school board. If, therefore, the contention of appellant that official ballots for the use of absent voters may only be issued by the secretary of the school board for elections to be held in the district is correct, it necessarily follows that ballots of absent voters may not be cast at elections called to vote upon a proposition for the establishment of a consolidated district. It is of the highest significance in this connection that the legislature has apparently sought to make the absent voters' law broad enough to include elections of every kind and nature that may be lawfully held in this state, except elections in certain classes of school districts. It will be observed that Section 927 refers to "any general, municipal, special, or primary election." The terms "general" and "special" election are defined by Section 720 as follows:

"1. The term 'general election' means any election held for the choice of national, state, judicial, district, county, or township officers. * * *

"3. The term 'special election' means any other election held for any purpose authorized or required by law."

Manifestly, elections of the character we are discussing do not come within the foregoing definition of general elections. The term "special election" means any election not general, held for any purpose authorized or required by law. *Hutchins v. City of Des Moines,* 176 Iowa 189. Are not, therefore, elections called by the county superintendent in pursuance of the provisions of Chapter 209 special elections? They are elections authorized by law, and, upon the filing of a petition signed by a specified number of citizens, required to be called. It seems to us that they come within the plain definition of the statute, and that the absent voters' law is applicable thereto. At any rate, it seems clear that the purpose and intent of the legislature was to enact an absent voters' law broad and comprehensive enough to enable absent voters to cast their ballots at any election legally held

in this state, except as noted above. It would be an anomaly in legislation for the legislature to provide a method by which absent voters might express their will at an election for the dissolution of a consolidated district and deny them the same privilege when the election to be held has been called to determine whether such a district shall be established. It would seem clear that the word "in," as used in Paragraph 1 of Section 927, Code, 1927, with reference to elections, must be interpreted to mean "for," or "on behalf of,"—that is, to refer to elections in which some interest of the district's is involved or to be served. The election in question was a special election, and there can be no doubt that it was the purpose and intention of the legislature to authorize absent voters to cast their ballots at such elections. The question, then, that naturally arises at this point is: Is the failure of the legislature to designate the county superintendent as the proper officer to receive the applications thereof and to issue official ballots to absent voters a fatal defect in carrying out the general purpose? Not only does the statute require the county superintendent to call the election, but he is also required to appoint the judges thereof, who are required to make return of the ballots to him. Unless authority has been conferred upon the county superintendent to receive applications and issue official ballots, the general purpose of the legislature to make provision for absent voters must fail as to such special elections. It is the universal rule of statutory construction that, wherever a power is conferred by statute, everything necessary to carry out the power and make it effectual and complete will be implied. *State v. Baltimore & O. R. Co.*, 78 W. Va. 526 (89 S. E. 288); *State v. Huxford*, 35 R. I. 387 (87 Atl. 171); *State ex rel. Otto v. Kansas City*, 310 Mo. 542 (276 S. W. 389); *Clegg v. City of Spartanburg*, 132 S. C. 182 (128 S. E. 36); *Paine v. Savage*, 126 Me. 121 (136 Atl. 664); *Barrett v. Union Bridge Co.*, 117 Ore. 220 (243 Pac. 93).

Provision having been made by the legislature by which absent voters may cast their ballots at any special election, we think the power and duty of the county superintendent to receive applications for official ballots and the issuance thereof to absent voters are clearly and necessarily implied. No other officer is authorized to perform this duty. The secretary of

an independent district has no part which he can perform in elections called by the county superintendent to vote upon a proposition to dissolve a district. He is not a part of the election machinery, and no authority has been conferred upon him by the statute. We conclude, therefore, that the ballot of Sarah E. Archer was legally cast.

IV. A ballot cast by Robert Bevard, an absent voter, is objected to on the ground that it bore identifying marks. The alleged identifying mark is the impression of a notarial seal on the ballot. This resulted from placing the ballot in the return envelope before the notary affixed his seal to the affidavit printed thereon. It is also objected that the ballot was not marked by the voter in secret, but in the presence of the notary and another person. Section 815 of the Code of 1927 provides that:

"Any ballot marked in any other manner than as authorized in the six preceding sections, and in such manner as to show that the voter employed such mark for the purpose of identifying his ballot, shall be rejected."

The explanation of the notary as to how the impression of his seal came to be placed upon the ballot is quite conclusive against any purpose or intention on the part of the voter to mark it for identifying purposes. The testimony also shows that the voter stepped to one side, and in reality marked his ballot in secret. No one saw it after it was thus marked. The contention of appellant as to this ballot cannot be sustained. *Fullarton v. McCaffrey*, 177 Iowa 64; *Kelso v. Wright*, 110 Iowa 560; *Voorhees v. Arnold*, 108 Iowa 77.

The remaining questions discussed by counsel for appellants, even if decided in their favor, would not change the result. Except as we have already stated, all of the votes cast in favor of appellee were legal, and properly counted by the district court. The judgment is, accordingly,—*Affirmed*.

EVANS, FAVILLE, DE GRAFF, and WAGNER, JJ., concur.

ALBERT, C. J., and KINDIG, J., dissent.