WESLEY WALL et al., plaintiffs-appellees, v. COUNTY BOARD OF EDUCATION OF JOHNSON COUNTY et al., defendants, LONE TREE INDEPENDENT SCHOOL DISTRICT et al., intervenors-appellants, AND PLEASANT VALLEY TOWNSHIP SCHOOL DISTRICT et al., intervenors-appellees.

HOMER EDEN, SR., et al., petitioners-appellees, v. COUNTY BOARD OF EDUCATION OF JOHNSON COUNTY et al., respondents, AND LONE TREE INDEPENDENT SCHOOL DISTRICT et al., intervenors-appellants.

WESLEY WALL et al., plaintiffs-appellees, v. COUNTY BOARD OF EDUCATION OF JOHNSON COUNTY et al., defendants, AND LONE TREE INDEPENDENT SCHOOL DISTRICT, defendant-appellant.

No. 49229.

(Reported in 86 N.W.2d 231)

NOVEMBER 12, 1957.

W. H. Bartley and Edward F. Rate, both of Iowa City, for Lone Tree Independent School District, and fifty-two resident taxpayers of the proposed new district, appellants.

Messer, Hamilton & Cahill, of Iowa City, for plaintiffs-appellees.

William M. Tucker, County Attorney, and Charles A. Barker, Assistant County Attorney, of Iowa City, for defendants.

Arthur O. Leff, of Iowa City, for intervenors Pleasant Valley Township School District et al., appellees.

PETERSON, J.—On July 6, 1955, a petition to call an election for reorganization of four school districts, in accordance with chapter 275, 1954 Code, was filed with County Superintendent of Schools of Johnson County. The district was to be known as "Lone Tree Community School District." It was to be composed of Lone Tree Independent District, nearly all of Fremont and Lincoln Township Districts, and a narrow area along eastern border of Pleasant Valley Township. After proper preliminary statutory procedure, the County Board fixed September 13 as the election date. The proposal was adopted by following vote: Lone Tree Independent—195 yes and 9 no; Fremont—143 yes and 91 no; Lincoln—74 yes and 9 no; Pleasant Valley—15 yes and 5 no. Total—427 yes and 114 no. In the entire area the proposal carried by 79% of votes cast.

On July 13, 1955, an injunction action was filed by three taxpayers in the area, alleging certain irregularities and praying for temporary injunction as to holding of the election, and permanent injunction as to formation of district. The trial court granted temporary injunction, which injunction was stayed on hearing before two members of this court. The action was against County Board of Education, the individual members thereof, and County Superintendent of Schools. On September 6, 1955, a petition of intervention was filed by Pleasant Valley Township School District, and certain residents of the township representing 130 electors. These intervenors joined with plaintiffs in prayer for temporary and permanent injunction. After the election was held plaintiffs filed amendment to petition raising further questions concerning legality of the election, all of which were considered by the trial court and are now before this court. On July 18, 1955, Lone Tree Independent School District,

together with approximately 52 electors from Lone Tree, Pleasant Valley, Lincoln, and Fremont Districts filed petition of intervention, joining with defendants in the case. On July 13, 1955, two resident taxpayers in Fremont Township School District filed petition for writ of certiorari against County Board of Education, the individual members thereof, and County Superintendent, alleging irregularities in connection with the reorganization proceedings. On July 18, 1955, Lone Tree Independent School District, together with approximately the same 52 electors as appeared in the previous case, filed petition of intervention denying the allegations of plaintiffs' petition and praying that the proceedings be held legal. On October 1, 1955, three resident taxpayers, living in that part of Fremont Township School District sought to be consolidated, filed a petition in equity to set aside and nullify all proceedings in connection with the reorganization and election. The defendants in this action were County Board of Education, the individual members thereof, County Superintendent, Lone Tree Independent School District, Pleasant Valley Township School District, and Fremont Township School District. Lone Tree Independent School District filed answer denying all allegations of plaintiffs' petition. Pleasant Valley School District answered and approved plaintiffs' position.

By consent of all parties and by order of court the three cases were consolidated for trial. It was stipulated that all testimony taken was applicable to all three cases and the paramount issue was as to the validity of the election which resulted in establishing the school district.

The trial court decided the cases in favor of plaintiffs and intervenors who joined with them. In all cases Lone Tree Independent School District and the many residents joining with them as intervenors, and Lone Tree Independent School District as defendant in the case in equity, filed notices of appeal as against plaintiffs and the intervenors joining with plaintiffs.

County Board of Education and the individual members thereof and County Superintendent did not file notice of appeal, and appellees have filed motion to dismiss this appeal, which motion was ordered submitted with the case. The principal basis for the motion is that since said parties have not appealed, the

decision of the trial court as against them has become the law of the cases, and even though the cases are reversed such parties would not be able to take the necessary proceedings to consummate the formation of the district. They allege a reversal would only create a situation which would be moot, and not effective in any manner.

The material and substantial issues in the cases have been sharply drawn as between the parties to the appeal. Pleadings were duly filed by plaintiffs as against the petitions of intervention filed by appellants in the various cases. A complete answer to the position of appellees is the fact that in the general equity case filed for the purpose of declaring all proceedings and the election illegal *Lone Tree Independent School District was a defendant*. As such defendant said district served notice of appeal upon plaintiffs. The testimony offered applied as to this case in equity, with directly opposing parties.

A reversal validates the election and formation of the district. There are no additional proceedings to be taken by County Board of Education. The fact that the County Superintendent did not serve notice of appeal will not prevent him from performing his further statutory duties.

We considered a somewhat similar question in State ex rel. Brown v. Beaton, 190 Iowa 216, 234, 178 N.W. 1, 8, 180 N.W. 166. This was an action involving removal of railroad property. The Attorney General entered the case on behalf of State of Iowa and gave sanction to prosecution of the suit. He filed petition of intervention. Plaintiffs appealed, but the Attorney General did not perfect any appeal. In the case we said:

"The Attorney General, in behalf of the State, filed a petition of intervention, alleging the facts set out in the petition, and, 'by reference and adoption, makes said petition a part of the petition' by him filed, and prayed for the same relief. He did not, however, join in the appeal, and it is contended that, for this reason, the appeal should not be entertained. Sanction having been given to the prosecution of the suit in the trial court, such sanction is not withdrawn by the officer's omission to perfect an appeal. The only interest of the State is that donors and taxpayers, and any others interested, be fully protected by

procedure appropriate for that purpose. It was without direct interest, and for this reason the omission to appeal will not be allowed to prejudice relator or others interested. People ex rel. Garrison v. Clark, 72 Cal. 289, 13 Pac. 858; People ex rel. Rondel v. North San Francisco H. & R. Assn., 38 Cal. 564."

In the case at bar the interested parties were the respective school districts and the electors who were parties in the three cases. The omission to appeal on the part of the County Board of Education and County Superintendent cannot be permitted to prejudice the substantial rights of the districts and such parties. Motion to dismiss filed by appellees on basis of above allegation is overruled.

Appellees also raise the question in their motion that appellants' record was filed one day late, and the appeal should therefore be dismissed. The court had extended time for filing to March 21, 1957. It was filed on that date. Appellees claim it should have been filed on March 20. In view of the honest difference of opinion, and since no prejudice resulted, we overrule this section of the motion.

The allegations of plaintiffs' three petitions, with two exceptions, were sustained by the trial court. They are substantially identical with appellants' assignments of error and are as follows: 1. Use of absentee ballots (this was approved by the court, but is argued by appellees). 2. Holding more than one election within twelve months. 3. The holding of repetitious and vexatious elections. 4. The formation of the district was the result of a gerrymandering process. 5. There was an error in the description of the boundaries of the proposed district in all printed notices. 6. There were several irregularities in connection with the election, as follows: the notices were not properly captioned or addressed to any person or corporation; the posting and publication of notices of election were not in accordance with statute; the election judges did not follow the statute by posting instruction cards and sample ballots in voting places; notices were not posted as to change of a voting place. 7. Proper surveys and study as to the proposed new district were not made by school officials; the reorganization plan involved in the election was not properly adopted by County Board nor approved by

State Department of Public Instruction. 8. Chapter 275, 1954 Code, is unconstitutional. (The trial court did not pass on this question, but appellees argue it at length.) 9. Appellants failed to comply with R. C. P. 344 as to a material and decisive ruling of the court in its decree.

I. Appellees allege the use of absent voter ballots was illegal in a special election of this type. Twenty-two absent voter ballots were cast. The trial court did not agree with the contention and we approve the court's ruling. In its decree our attention is directed to section 53.1, which specifically provides for use of absentee ballots in special elections. In Willis v. Consolidated Independent Sch. Dist., 210 Iowa 391, 395, 227 N.W. 532, 534, special election is defined as follows: "[It] means any other election held for any purpose authorized or required by law." In addition to approving the use of the ballots the court directs attention to the fact that said ballots did not change the result of the election, and under such circumstances appellees "may not successfully c'aim that the election was invalid because of the use of such invalid absentee votes."

II. One of the principal grounds on which the trial court held the election illegal was that other elections for reorganization had been held in the same area within twelve months. In section 275.10, which provides only for merger of two districts, the last sentence is: "Not more than one election shall be held in any twelve calendar months." The election involved in the case at bar was not a two-district election. The territory involved was composed of three districts and part of a fourth district. The procedure is not controlled by section 275.10, but by sections 275.11 to 275.23 inclusive. The legislature did not place in any of the later sections a provision concerning the twelve calendar-month restriction. The question before us is whether or not the restriction contained in section 275.10 is effective as to sections 275 11 to 275.23. This question has only been before this court incidentally. It was directly considered in an Attorney General's opinion. 1955 Attorney General's Opinions, page 69. The opinion directs attention to the fact that there are two methods of school district reorganization: one in section 275.10; the other in sections 275.11 to 275.23. The opinion states: "For this reason the restriction [12 months] on re-

218

submitting the question contained in section 275.10 would have no application to a reorganization under sections 275.11 to 275.23. Cook v. Consolidated School District, 240 Iowa 744, 38 N.W.2d 265."

The following statement appears in support of the opinion: "That said sections provide distinct, separate, and independent procedures is further borne out by reference to their legislative forbears. Section 275.10, Code 1954, is derived from section 274.16, Code 1950. Sections 275.11 to 275.23 are derived from chapter 276, Code 1950. That the procedure in chapter 276 was independent of any method in chapter 274 was expressly held in Cook v. Consolidated School District, supra." We do not consider this opinion in the nature of a judicial precedent, but it is entitled to weight. This is especially true since we agree with the opinion.

The position of the trial court is that there would be no reason for the legislature to confine this provision to section 275.10. We cannot approve this ruling. The legislature did confine the limitation to the section as to merger of two districts. If it had been the intention of the legislature to extend the provision to sections 275.11 to 275.23, they could and would have so stated. Neither the trial court nor this court can by judicial decision extend and enlarge the enactments of the legislature.

III. The trial court has announced a novel and rather peculiar principle of law in further support of its position as to illegality of the procedure and election. The court announces that "A court of equity will take cognizance of the vexatious, sinister, and irreparable injuries that follow in the wake of a school election, and especially where there were as many elections held during such a short period of time as were held in this case." It is true that four previous petitions had been filed by residents of the area involved, together with residents of surrounding and additional territory. No petition had been previously filed involving the specific territory included in this case. Because of these actions, not alone of the citizens of the territory involved herein, but of many other citizens in adjacent areas, the trial court declares the election illegal. The election has been held. The proposal carried by an overwhelming vote of the

electors of the districts involved. Are these electors to be disenfranchised because previously the citizens of this area, together with the citizens of surrounding territory, held free and open elections at which everybody expressed their opinion by their vote?

■ Equity has been used as a remedy in connection with injunction against a multiplicity of suits. 30 C. J. S., Equity, section 42. We have considered this phase of equitable relief in Benedict v. Hall Mfg. Co., 211 Iowa 1312, 1320, 236 N.W. 92, 95. A multiplicity of suits had been instituted where, in fact, plaintiffs had a remedy at law, which was not pursued. In the case we stated: "As has frequently been stated in the decisions, this power of the equity court will only be exercised with *great caution*. and only for *very substantial reasons*." (Emphasis ours.)

The situation is not completely analogous as to the case at bar, but this is as close as we have come to it in precedent. In the case before us the trial court did not proceed with *caution*, nor for *substantial reasons*. The various election proceedings were started, and elections held, on the basis of petitions signed by at least a third of the citizens in the proposed district. This court fails to find anything sinister, vexatious or committing irreparable injuries, from the fact that free and independent citizens proceed on their own volition to file several petitions for reorganization of school districts in the hope of betterment of educational opportunities for their children. The fact that previous elections failed does not make them sinister.

■ IV. The trial court held defendants were guilty of a gerrymandering process in the formation of this new district. We have always envisioned a gerrymandered area as something in the shape of a monkey wrench. This district is a substantially solid tract approximately twelve miles north and south and six miles east and west in area. It is true that at a few points the boundary is not straight and slight variations were made for the purpose of including some residents and electors favorable to reorganization, and excluding certain abutting territory because the residents and electors were not in favor of the consolidation. As long as the district in general was approximately one solid area, if certain folks in adjoining areas did not approve reorganization, it was not wrong to respect their wishes and leave

them out. Appellees contend serious educational damage results to the parts of townships not included. The answer is, after the failure of three elections it was evident the residents of such sections of the various townships did not approve of reorganization. We may not approve the wisdom of failure to approve reorganization, but we grant the electors complete right to disagree. However, this should not grant them the right to deter or destroy the right of their neighbors to reorganize.

We have previously considered this question in connection with school consolidation. The matter had attention as early as 1921 in State ex rel. Kirchgatter v. Thompson, 190 Iowa 1160, 1166, 181 N.W. 434, 437. Some elements in this case are similar to the case at bar because appellees complain bitterly about what they call dividing of some farms. In the Thompson case we said: "Much is said in argument by the appellant about so-called 'fraud,' because the lines of the corporation are irregular, zigzag, and in some instances divide a farm, leaving part of it within the consolidated district and part of it without. All of the proceedings for the organization of the district appear to have been legal, and in accordance with the law. We cannot, in this proceeding, review the discretionary action of the board of directors, or of the voters in fixing the boundaries of the district. *The electors had a perfect right,* under the statute as it then was, *to petition for such a district as they desired.* The boundaries were fixed, the election held according to law, and there is *nothing in the record upon which we could disturb the action so taken in this proceeding.*" (Emphasis ours.)

We have considered gerrymandering in recent cases. In State ex rel. Harberts v. Klemme Community School District, 247 Iowa 48, 53, 72 N.W.2d 512, 515, we said: "The legislature seems to have preferred to intrust to the respective county boards of education the duty to protect against the gerrymandering or ill-advised or designed redistricting, and perhaps this is sufficient. They are usually composed of persons of integrity and high purpose." This quotation was approved in the more recent case of Everding v. Board of Education, 247 Iowa 743, 754, 76 N.W.2d 205. In this case we said in substance that one third of the citizens in the districts involved petitioned for reorganization. The question of the boundaries was considered and decided by the

county board of education. Section 275.16 contains the language that the action of the county board of education with reference to boundaries "shall be final" and that this "meant just what it said, the fixing of boundaries or dismissing the petition by county board was final and no appeal was provided for."

In their argument as to gerrymandering appellees discuss eleven cases. Three of the cases are Iowa decisions; eight are from other jurisdictions. The decisions in the eight cases from foreign jurisdictions are not convincing in view of the decisions on the question within our own jurisdiction. The Iowa cases cited were: State ex rel. Martinson v. Consolidated Ind. Sch. Dist., 190 Iowa 903, 181 N.W. 178; Cook v. Consolidated School District and State ex rel. Kirchgatter v. Thompson, both supra. None of these cases supports appellees' position. The first case was decided under our legislative provision that boundaries should be set along subdistrict lines. This provision was repealed before the case at bar arose. The Cook case simply held chapter 276 was applicable, instead of sections 274.23 and 274.24. We have heretofore quoted a statement from State ex rel. Kirchgatter v. Thompson, supra, which supports the position of appellants.

We hold there is not such departure from statutory procedure that the election can be held illegal on the ground of gerrymandering.

V. The trial court held the organization of the new district was invalid because of various irregularities in procedure. The first irregularity considered by the trial court was the question of a slight error in the lengthy description of the real estate in the published notices as to hearings and election. The description of the real estate was correct in the petition filed with the County Superintendent. It was correct in the copy supplied to the printer. The printer made a mistake. At one place the description should have read "thence south to the southeast corner of the $N\frac{1}{2}$ of the $SW\frac{1}{4}$ of the $SW\frac{1}{4}$ of said section." The printer omitted the second "of the $SW\frac{1}{4}$" and stated: "thence south to the southeast corner of the $N\frac{1}{2}$ of the $SW\frac{1}{4}$ of said section." (Emphasis ours.) This is a technical error, and one that should not vitiate the election. We have considered a similar situation in previous cases.

In State ex rel. Ondler v. Rowe, 187 Iowa 1116, 1128, 175 N.W. 32, 36, we said: "The rule that, where jurisdiction to call an election has once attached, subsequent mistakes and irregularities in the manner and method of the call made and election held do not oust the jurisdiction * * *."

We again considered the question in State ex rel. Odekirk v. Peterson, 199 Iowa 52, 54, 201 N.W. 71, 72, where the petition carried the correct description, but typographical errors appeared in the notices and ballot.

 We stated: "It appears from evidence in this case that no elector was misled or prejudiced in any way. Furthermore, the records of the district correctly described its boundaries. This was open to the electors. The petition filed also correctly described the boundaries. The relators were residents within the district, and doubtless had some knowledge as to the boundaries; and they could, by inquiry, have gone to the records. They were simply voting on the question as to the dissolution of their own district. Gallagher v. School Township, 173 Iowa 610, 618, 154 N.W. 437; Calahan v. Handsaker, 133 Iowa 622, 627, 111 N.W. 22; Lehigh Pipe & Tile Co. v. Town of Lehigh, 156 Iowa 386, 392, 396, 136 N.W. 934. We held, in Smith v. Blairsburg Ind. Sch. Dist., 179 Iowa 500, 506, 159 N.W. 1027, that it is enough if the petition as a whole indicated the boundaries of the proposed district in any definite manner. In some cases, we have held that a petition and notice will be construed as embracing certain territory, though not specifically mentioned, when fairly susceptible of such construction, and where so treated by the school board, county superintendent, and voters." Also see State ex rel. Warrington v. Community School Dist. of St. Ansgar, 247 Iowa 1167, 78 N.W.2d 86.

In this case no elector was misled by the slight typographical error in the description. The petition was correct and the county board of education assumed jurisdiction. Every elector knew what territory was involved in the proposition on which he was voting.

VI. Appellees allege that because of certain irregularities in the notice of election, publishing thereof, failure to post instruction cards and sample ballots, and failure to post notices

as to change of voting place, the election was illegal. The trial court approved this contention. Appellees contend notice of hearing on original petition, notice of hearing on the adjourned meeting, notice of decision of the County Board and notice of the election were not properly captioned and were not addressed to any person or corporation. As to notice of hearing on the petition, section 275.14 provides "and give notice * * * by one publication in a newspaper published within the territory described in the petition." In case of an adjourned hearing similar notice shall be given. Section 275.15 provides concerning the decision of the Board: "The county superintendent shall at once publish this order in the same newspaper in which the original notice was published * * *." Section 275.18 provides with reference to the notice of election, "by giving notice by one publication in the same newspaper as previous notices concerning it have been published * * *." The notice of hearing on original petition was captioned "Official Publication Notice" and then proceeds: "Notice is hereby given to all persons whom it may concern." Notice as to adjourned hearing was in similar form. The notice of decision of the Board as to boundaries was captioned, "Notice of Decision and Order of the Johnson County Board of Education." The notice as to the time and places of hearing for the election was captioned, "Notice of Election, In the Matter of the Proposed Community School District of Lone Tree in the County of Johnson, State of Iowa." It is addressed to: "All Qualified Voters residing within the limits of the boundaries hereinafter set forth, in the County of Johnson, State of Iowa."

As to the allegation of appellees that the notices were not captioned or addressed to any person or corporation, the only alternative would be that the County Superintendent secure a list of all residents and property owners of the affected district and publish the list in the notices. The fundamental value of publication of the various notices is to advise all electors as to the progress of the proceedings and as to the election. This purpose would not be accomplished any more effectively by the listing of the names of residents and property owners in the approximately seventy sections involved in this area than to address the notice to "All Qualified Voters residing within the limits of the boundaries hereinafter set forth." The notices were

all published in the country paper published in the town of Lone Tree and we can assume that the extent of the area reached by this paper was approximately the area involved in the reorganization. Publishing the list of names would not reach any more people. No witness testified that he was prevented from voting through failure of knowledge as to the election. Under the statutory provisions as outlined, it is our opinion that the legislature did not intend that the names of all property owners and residents be listed. The addressing of the notices to all persons concerned was sufficient.

Appellees contend it was not sufficient that the notices be published in accordance with the provisions of chapter 275. They claim section 277.3, which provides that notices as to election shall be posted in five public places in the corporation, is also effective. They contend that under section 49.23, which provides that if there is a change made from the usual place of holding elections in a township, notice of the change shall be posted in three public places in the township. We hold the publication of notice as provided in the specific Act concerning reorganization is sufficient. As to section 49.23, the circumstances were that there was no business establishment or public building in the portion of Pleasant Valley Township included within the proposed reorganization boundaries. A farmhouse approximately in the center of the area was selected as a voting place, and location of this voting place was duly given in the published notice of election. Under these circumstances the situation would not be controlled by section 49.23, as there was no change in place of voting. Notice by publication was sufficient. We have held in State ex rel. Warrington v. Community Sch. Dist. of St. Ansgar, supra, that even if there was a change of the place of voting immediately prior to the election from one building to another close by, the election was not thereby vitiated.

Appellees further contend that the judges of election at one polling place failed to post copies of instruction cards and sample ballots as provided in the general election law. There was some conflict in the evidence concerning the matter. One judge stated the instruction cards had been laid out on a desk in the polling place where they could readily be seen, but one of the

clerks testified they had been posted. There is no evidence on the part of any witness that he was in any manner confused or misled by reason of this instruction card and sample ballot situation. We hold it was not a material irregularity.

As to procedural statutes of the type involved in this case there should be a liberal construction as to minor and insignificant irregularities. State ex rel. Ondler v. Rowe, 187 Iowa 1116, 175 N.W. 32; Zilske v. Albers, 238 Iowa 1050, 1056, 29 N.W.2d 189, 192; State ex rel. Warrington v. Community Sch. Dist. of St. Ansgar, supra. In Zilske v. Albers, supra, we said: "We have held emphatically that the statutes here in question are to be liberally construed. * * * Courts will go no further than to see that the methods pursued are in substantial accord with those prescribed by statute. State ex rel. Ondler v. Rowe, 187 Iowa 1116, 1123, 175 N.W. 32, 34. To adopt the language of the Rowe case: '* * * if such perfection of proceedings is to be demanded of them, few, if any, organizations of school districts could successfully withstand attacks at the hands of discordant and contentious minorities. The courts very properly * * * go to the limit of liberality in giving effect to the voice of a majority, wherever it can reasonably be done without violence to the manifest spirit and intent of the Legislature.' "

The irregularities for which appellees rather strenuously contend are trivial and insignificant. There is no evidence that any elector was deprived of the ballot or was misled to his prejudice by any of the proceedings concerning which appellees complain.

VII. Appellees claim the surveys of the area had not been made as required under sections 275.1 and 275.2. They further claim that no study or survey was conducted between the filing of the last petition on July 6, 1955, and the election on September 13. The record shows that under direction of the County Superintendent surveys and study were started in 1948 as a basis for preparing an over-all county reorganization plan. In 1951 the original county plan was adopted, including all information concerning the area involved in this action; maps and charts showing trade areas, centers of population, roads, natural barriers, bus routes and other general information required under the two sections referred to above. These appear in evidence as

exhibits. The study was conducted in consultation with State Department of Public Instruction, and copy of plans was filed with the department. Starting in March of 1954, the County Superintendent and the County Board of Education had occasion to continue intensive and extensive studies of the Lone Tree area. During that period five petitions for reorganization were filed. Three were voted on and failed of approval; one was dismissed by the County Board; the final petition is the one involved herein. As a result of the study from March 23, 1954, to September 13, 1955, the County Board and Superintendent became familiar with all school questions and problems in the area. The County Board held a hearing as to the petition with which we are concerned. The evidence shows that when the County Board rendered its decision approving holding of the election on September 13, and fixing the boundaries of the district, such decision was the result of previous surveys, current careful study, and complete information as to school matters in that section of the county. Appellees complain the plan on which the electors voted on September 13 was not approved by the State Department of Public Instruction. This amendment to the original county plan, with maps, etc., was duly filed with the State Department.

It is not required that the State Department of Public Instruction approve a specific amendment to the plan as a prerequisite to its submission to the voters, in a reorganization *within a county*. The trial court took the position that the County Board had not given sufficient study to the area before submitting it to the electors, and that no approval of the proposition was ever made by the State Department. It was partly on this basis the court held the election invalid. We do not sustain the trial court on this feature of the case.

VIII. Appellees contend chapter 275 is unconstitutional. The trial court considered the question at some length and stated: "This court entertains grave doubt as to the constitutionality of Chapter 275 of the Code of Iowa, 1954, but because of its findings and judgment hereinafter set forth, it is unnecessary to pass upon this question." Appellees devote thirty-three pages in their brief to an able discussion of the question, and while we do not agree with appellees nor the trial

court, we desire to give the question consideration. We have held many times that when constitutionality of a statute is challenged the court must uphold constitutionality if possible. We must resolve every reasonable doubt in favor of constitutionality, and must not declare an Act unconstitutional unless it clearly, plainly, palpably and without doubt infringes on the Constitution. Vilas v. Iowa State Board of Assessment and Review, 223 Iowa 604, 273 N.W. 338; State v. Talerico, 227 Iowa 1315, 290 N.W. 660; Keefner v. Porter, 228 Iowa 844, 293 N.W. 501; Hiatt v. Soucek, 240 Iowa 300, 302, 36 N.W.2d 432, 433.

In Hiatt v. Soucek, supra, we said: "It is of course our duty to uphold the constitutionality of the statute if possible. * * * An Act will not be declared unconstitutional unless it clearly, plainly, palpably and without doubt infringes the Constitution * * * . We have repeatedly said in various ways that every reasonable doubt must be resolved in favor of constitutionality. The cases so holding are literally 'too numerous to mention.' See 5 Iowa Digest, Constitutional Law, Key No. 48; 16 C. J. S., Constitutional Law, section 98, page 234, note 2; also section 99."

 It is obvious we do not need to give extended attention to five of the six reasons alleged by appellees as to unconstitutionality of chapter 275. A simple statement of the allegations will suffice to show there is nothing in the chapter that violates the Constitution on these grounds. We will only mention them. Article XII, making the Constitution the supreme law of the state. This is correct, but has no special significance as to chapter 275. Article I, section 1, the right to acquire, possess and protect property. Article I, section 6: Uniform law provision. Article I, section 18: Eminent domain section. Article I, section 9, Iowa Constitution, and 14th Amendment to United States Constitution: Due process of law sections. No one is deprived of any property without due process under chapter 275. The only question might be the changes in taxation created by reorganization. We have held this is not a violation of constitutional rights. Peterson v. Swan, 231 Iowa 745, 2 N.W.2d 70; Thie v. Consolidated Independent School District, 197 Iowa 344, 197 N.W. 75.

 We will discuss appellees' allegation concerning Arti-

228

cle III, section 1, which in part is as follows: "* * * the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others * * * ." This is the section emphasized by appellees. Appellees claim in substance that chapter 275 reposes absolute, unregulated and undefined discretion as to legislative and judicial powers in the county board of education and the county superintendent.

Our mode of life has become so complex that many boards, administrative agencies and departments have been created to render proper governmental service to our citizenry. The details involved in this service are so numerous, complicated and changeable that for the legislature to enact them in detail would not only be impractical, but impossible. We recognize that the legislature cannot delegate its purely legislative powers. However, it may declare general rules as to functions and powers of boards, commissions and administrators of departments. Authority as to details and promulgation of rules and regulations to carry out legislative directions and policies may be delegated. In chapter 275 the legislature has delegated authority to county board of education to fix the boundaries of reorganized districts after study of educational conditions of the area and hearing on petitions filed. It has assigned certain administrative duties to the county superintendent. Procedure of the board and superintendent must be in accordance with general policies prescribed in the chapter. Rules, regulations and resolutions, or action by duly adopted motions, are permitted as long as they do not violate legislative provisions. Kistner v. Iowa State Board of Assessment and Review, 225 Iowa 404, 280 N.W. 587; City of Ames v. State Tax Commission, 246 Iowa 1016, 71 N.W. 2d 15; Michigan-Wisconsin Pipe Line Co. v. Johnson, 247 Iowa 583, 73 N.W.2d 820; Bruce Motor Freight, Inc., v. Lauterbach, 247 Iowa 956, 77 N.W.2d 613.

The rapid rise of boards, agencies and heads of departments has created many questions for judicial consideration. We have developed a definite line of decisions approving this modern procedure, starting with State v. Van Trump, 224 Iowa 504, 275 N.W. 569. This was followed with Miller v. Schuster, 227 Iowa

1005, 289 N.W. 702; Sanford Mfg. Co. v. Western Mut. Fire Ins. Co., 229 Iowa 283, 294 N.W. 406; Burlington Transp. Co. v. Iowa State Commerce Comm., 230 Iowa 570, 298 N.W. 631, and State v. Strayer, 230 Iowa 1027, 299 N.W. 912.

In the case of State v. Van Trump, supra (at pages 507, 508 of 224 Iowa), we announced the principle which we have since followed in the above cases and others. We said: "When the legislature declares a general rule and prescribes the circumstances under which it shall apply but in such general terms as to require that authority be delegated to others 'to fill up the details' by rule or regulation, the weight of authority is that the 'strictly and exclusively legislative' power has not been delegated. When the legislature lays down an intelligible and complete declaration of policy which is definite in describing the subject to which it relates or to the field wherein it shall apply, and the character of regulation which is intended to be imposed, it is proper to leave to a nonlegislative body the manner in which that general policy shall apply to varying situations."

In the next case of Miller v. Schuster, supra (at pages 1016, 1017 of 227 Iowa), we said: "Pursuant to the principles recognized by us in the Van Trump case above quoted from, this court has sustained numerous statutes, which delegate to administrative boards and officials power and authority 'to fill up the details' after the legislature has laid down 'an intelligible and complete declaration of policy which is definite in describing the subject to which it relates or to the field wherein it shall apply.' "

We considered the constitutional question in the recent case of State ex rel. Warrington v. Community Sch. Dist. of St. Ansgar, supra, where we stated at page 1179 of 247 Iowa, page 94 of 78 N.W.2d: "Plaintiffs' final contention was that the trial court erred in striking Division II of their petition asking that the constitutionality of chapter 275, Code of Iowa 1954, be determined. The constitutional question, of course, is not determinative of the appeal in view of our holdings above, and perhaps we should not consider that question here. It will suffice to say that we fail to find herein any acts of discretion or of abuse of discretion by the board which would lead to the conclusion that the Act itself conferred unconstitutional authority to the county school boards."

Appellees contend that even if chapter 275 is not unconstitutional the County Board and County Superintendent exercised their functions in this case in an unconstitutional manner. Their argument as to this question is not too clear, but we believe they are alleging that the actions of the Board and Superintendent were such that there was a violation of the statutory enactments. We had a case before us some years ago where this question was involved. Gilchrist v. Bierring, 234 Iowa 899, 14 N.W.2d 724. This case pertained to rules and regulations and administration thereof by the cosmetology board. We held the board did not properly administer some of the powers granted under the statute. The ruling pertained particularly to administration in accordance with the due process provision of the Constitution. We do not find any actions of the County Board or County Superintendent in the case at bar which can be called unconstitutional administration.

Appellees emphasize case of State ex rel. Donaldson v. Hines, 163 Kan. 300, 182 P.2d 865, as strong precedent for unconstitutionality of chapter 275. Kansas does not have a general constitutional provision such as Article III, section 1. The legislature enacted an Act "creating in each county of the state a school reorganization committee." This committee was granted broad powers. Section 21 of Article 2 of the Kansas Constitution provides: "The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient." The court said there was no other constitutional provision on which the Act could be based, and school reorganization was not "county business." Therefore the Act was unconstitutional. The case cannot be accepted as a precedent, because the constitutional provisions of the two states pertaining to the subject are not analogous.

We do not approve the contention of appellees as to unconstitutionality of chapter 275. The legislature has adopted sufficient policies, prescribed necessary conditions as to administration, and supplied adequate requirements as to study, investigation and hearings before action, so that constitutional provisions are not violated.

IX. Appellees contend the appeal should be dismissed or the findings, judgment and decree affirmed because appellants violated R. C. P. 344 in failing to assign as error one important and vital section of the decision of the trial court. This has reference to the statement of the trial court "that the actions of the County Board of Education and other officials were unfair, unreasonable, arbitrary and the result of hasty judgment and the equities were with the plaintiffs and intervenors joining with them." This is the conclusion of the trial court on the basis of numerous deficiencies described by the court in its decree as to procedure, notices and actions of the Board and Superintendent. Appellants have assigned as errors all of the alleged reasons and deficiencies on which the trial court based the conclusion above stated. This is sufficient. We overrule this contention of appellees.

In accordance with section 275.24 the effective date of change as to the reorganized district approved herein is July 1, 1958. For the remainder of the school year of 1957-1958 all districts involved will continue present operation. According to section 275.25 a special election shall be called by the County Superintendent, by giving notice by one publication in the same newspaper in which previous notices have been published, for the election of five directors, which election shall be held on or before June 10, 1958. A treasurer shall also be elected at the same election.

For the reasons as heretofore stated, the case is reversed. —Reversed.

All JUSTICES concur.