PLEASANT HILL INDEPENDENT SCHOOL DISTRICT et al., appellants;
STATE ex rel. KENNETH FERGUSON et al., added appellants,
v. RALPH C. NORRIS, Polk County Superintendent of
Schools et al., appellees.

No. 49607.

(Reported in 94 N.W.2d 765)

FEBRUARY 10, 1959.

Earl Gritton, Howard Steele, John V. Synhorst, and Donald L. Beving, all of Des Moines, for appellants.

Neal E. Smith and James P. Irish, both of Des Moines, for appellees.

GARRETT, J.—This case involves the validity of the proceedings for the organization of the Consolidated Independent School District of Southeastern, in Polk County.

On April 30, 1953, at eleven p. m. a petition was filed requesting the consolidation of twelve districts into one district to be called the "Consolidated Independent School District of Southeastern" in Polk and Jasper Counties. On May 1, 1953, chapter 117, Acts of the Fifty-fifth General Assembly, became effective. It repealed chapter 276 of the 1950 Code but contained a saving clause which provided that no proceeding for consolidation commenced prior to the effective date of the Act should be invalidated by the Act.

Certiorari proceeding was brought to test the legality of the formation of the consolidated district, trial was had and on appeal the questions then at issue were decided by this court in Grant v. Norris, 249 Iowa 236, 85 N.W.2d 261. In that case we held the proceeding for consolidation, having been commenced prior to the effective date of chapter 117, is governed by chapter 276 of the Code, 1950. The district court on November 23, 1957, entered judgment accordingly. Further proceedings were had pursuant to the organization of said district, the proposition was submitted to the electors on January 28, 1958, and carried in all districts except Pleasant Hill where the vote was five for and one hundred thirty-five against consolidation.

The plaintiffs, Pleasant Hill Independent School District and certain individuals, taxpayers and citizens of Polk County, on February 20, 1958, filed their petition praying that an order be entered staying the election to be held on February 27, 1958, and all further proceedings pending final hearing on their case, that a writ of certiorari issue commanding the defendant County

Superintendent, Ralph C. Norris, to certify to the district court a transcript of the record and proceedings in connection with the establishment of the proposed district and that upon final hearing all proceedings had in connection with the matter since November 23, 1957, be annulled and set aside.

On February 24, 1958, the court entered an order for a writ of certiorari commanding the defendant County Superintendent to certify to it all records made and proceedings had since November 23, 1957, in connection with said proposed consolidated district, including all records of the conduct and the result of the election of directors and treasurer to be held on February 27, 1958.

Subsequently, by stipulation, there was joined with said certiorari action an action in quo warranto against the purported district and those elected officers thereof, challenging the corporate existence of the district and the right of those elected to hold office.

The facts are not in dispute. On March 6, 1958, the parties stipulated: "6. That on January 16, 1958, said County Superintendent, Ralph C. Norris, caused a notice to be published of an election to be held as to the formation of the proposed district and set January 28, 1958, as the date of such election. 7. That such election was held, that each school district was made a voting precinct and that the results thereof by school districts were as follows: * * * Pleasant Hill Independent, YES 5, No 135 * * *." Also, "10. That the town of Pleasant Hill was incorporated in the year 1956; that such town lies within the Pleasant Hill Independent School District involved herein, and that defendants waive any necessity of proof that such town of Pleasant Hill had a population of 200 or more inhabitants. That at the time of said incorporation in 1956 and at all times since, the incorporated town of Pleasant Hill has had a population of more than 200 inhabitants. That the town of Pleasant Hill was not listed in the last previous census taken in 1950 for the reason that the same was not an incorporated town at that time. That the area which presently comprises the incorporated town of Pleasant Hill had in the year 1950 and at all times subsequent thereto, a population of more than 200 inhabitants. That the Pleasant Hill School Board caused a

census to be taken of the incorporated town of Pleasant Hill for purposes of the elections held for the formation of the proposed district in question on January 28, 1958, and that said census showed that said incorporated town of Pleasant Hill had a population of 322 at that time. That said census taken at the direction of the Pleasant Hill School Board was in fact taken during the first week in January, 1958. 11. That prior to 1956, the said Pleasant Hill School District did not include a city, town or village with a population of two hundred or more inhabitants."

The appellants state the proposition they rely upon for reversal as follows: "The trial court erroneously upheld the establishment of the Consolidated Independent School District of Southeastern and the election of officers therefor, since the negative vote of the Pleasant Hill Independent School District, containing an incorporated town of more than 200 population, at the election on January 28, 1958, on the proposition to establish the new district, sufficed to defeat the proposition under the provisions of Chapter 276, 1950 Code of Iowa."

The appellees state two propositions relied upon for affirmance: 1. "The method of tabulating the votes on the question of reorganization was properly determined by the situation as it existed on the date of the filing of the original petition in 1953, and not by the situation as it existed on January 28, 1958, the date of the last election." 2. "Even if Pleasant Hill District was to be considered an urban district for the purpose of tabulating the votes, it would have been tabulated with the votes in the Altoona Independent School District, the other urban area, and the net result would have been the same."

The trial court held, "That the vote in the Pleasant Hill Independent School District must be counted and evaluated as though it did not contain an incorporated town with a population of in excess of two hundred."

I. The question for determination is, did the trial court err in holding that the votes cast on January 28, 1958, when there was an incorporated town with a population of more than two hundred inhabitants in the Pleasant Hill Independent School District, should be tabulated and evaluated as though there were no such town?

550

The answer must be found in the construction to be placed upon three sections of the Code, 1950, as follows:

"276.13 *Separate vote in urban territory.* When it is proposed to include in such district a school corporation containing a city, town, or village with a population of two hundred or more inhabitants, the voters residing upon the territory outside the limits of such school corporation shall vote separately upon the proposition to create such new corporation."

"276.15 *Separate ballot boxes.* The judges of election shall provide separate ballot boxes in which shall be deposited the votes cast by the qualified electors from their respective territories."

"276.16 *Canvass and return.* The judges of election shall count the ballots, make return to and deposit the ballots with the county superintendent, who shall enter the return of record in his office. If the majority of the votes cast by the qualified electors are in favor of the proposition, a new school corporation shall be organized, except that in cases where separate ballot boxes are required by law, a majority of the votes cast by the qualified electors from their respective territories shall be required."

▇▇ It is true there was no incorporated town in Pleasant Hill district when the proceedings were started in 1953. There was such town when the election was held in 1958. Was the court justified in ignoring the facts as they existed at the time of the election and holding that the voting rights were frozen as of the day the petition was filed? Whether he was justified in so holding depends upon the legislative intent as to whether the requirement for separate ballot boxes was fixed as of the time of filing the original petition, the time of the establishment of the boundaries or the time of the election. We hold the requirement for separate ballot boxes relates to the time of the election only.

"When it is proposed to include in such district a school corporation containing a city, town, or village * * * the voters residing upon the territory outside the limits * * * shall vote separately" can refer only to the time of the election. The word "voters" as used refers to the voters at the time of the election. They are the ones who vote separately and not those who were

eligible voters in the district when the petition was filed some four years before. The legislature could not have intended that the voters in the district when the petition was filed, some of whom may be dead when the election is held, shall vote separately. The separate ballot boxes are required only for those who shall vote on election day, that is, those who are residing in the district when that time arrives. They only would be the eligible voters at that time.

It thus seems clear the legislature fixed the time of the election as the time when separate ballot boxes are required, as they would be of little value at any other time.

When the petition to establish the district was filed in 1953 it was proposed to include therein Pleasant Hill Independent School District with all of its benefits and its burdens, with all its citizens, whomsoever they might be when the election was finally reached, and regardless of their corporate status and activities. There was no legal impediment to the incorporation of the town of Pleasant Hill.

This is not in any sense a controversy between two pending reorganization proceedings. It is a legal and ordinary proceeding pursuant to one pending petition. "The organization of an incorporated town alone has no effect on the boundaries of school districts. These continue as before the incorporation." Independent School District v. Jones, 142 Iowa 8, 11, 120 N.W. 315, 316; Claussen v. Perry, 248 Iowa 108, 79 N.W.2d 778. There was no question of priority as there might be between two school districts competing for the same territory. In this case separate ballot boxes were required by statute and it is therefore mandatory that in order for it to carry, the proposition must have had a majority in each of the respective territories. The trial court held otherwise and we must therefore reverse.

II. Appellees urged but the court did not decide a second proposition. It was that the votes of the Pleasant Hill district should be counted with those of the town of Altoona as one territory.

This proposition is utterly untenable as a careful reading of sections 276.13 and 276.16 discloses. "* * * where separate ballot boxes are required by law, a majority of the votes cast

by the *qualified electors from their respective territories* shall be required." Section 276.16. (Emphasis ours.)

Section 276.13 provides: "* * * the voters [meaning all voters] residing upon the territory outside the limits of such school corporation [Pleasant Hill Independent School District] shall vote separately * * *", which means, of course, that the voters within such corporation shall also vote separately. The words "such school corporation" means one corporation and not a grouping of two or more. Thus, a separate ballot box was required for Pleasant Hill district as it was a separate territory within the plain and mandatory language of the statute. No authority can be found for saying arbitrarily that two disconnected and separate districts, villages or territories constitute a single territory. Clearly they are "respective territories" and cannot be counted together. By judicial repeal the trial court expunged the two above sections, both of which were at all times applicable to this case. We have no right to ignore the positive mandates of the statutory law which says "* * * that in cases where separate ballot boxes are required by law, a majority of the votes cast by the qualified electors from their respective territories shall be required" and thereby deprive Pleasant Hill district of the rights given it by law.

██ The primary rule of statutory construction is to ascertain and give effect to the legislative intent. Grant v. Norris, supra. In the case of State ex rel. Little v. Owens, 244 Iowa 1356, 60 N.W.2d 521, where a question of compliance with section 276.13 was raised, the court said at page 1363: "The statute here involved was section 276.13, Code of 1950. It required only that voters *residing outside the limits of the school corporation which contained a village* vote separately. The record here shows a separate ballot box was provided in and for the school district in which the village in question was situated, as well as in each of the other school districts. Although this would not have constituted compliance with the earlier statute, *it did comply with section 276.13, Code of 1950, which required only that residents of the school district containing the village vote separately from residents of the other school districts."* (Emphasis ours.)

Discussing chapter 276, Code, 1950, 39 Iowa Law Review at page 595 states: "[Section 276.13] * * * gave persons living outside the district containing the urban community the right to vote separately as a unit. Ipso facto, the persons living within the urban district voted as one unit. * * * Then, as now, separate ballot boxes were supplied for each voting territory, and, under the old consolidation procedure, a majority vote in each voting territory was essential to the formation of this district."

In State ex rel. Hilfiker v. Seaton, 191 Iowa 81, 85, 181 N.W. 796, 797, we said, regarding chapter 149, Acts of the Thirty-eighth General Assembly, quoting that part which is identical with section 276.13, except that the word "corporation" was substituted for "district": "The language of the above enactment is plain, certain and unambiguous. If the petition fixing the boundaries of a proposed consolidated independent school district includes a school corporation containing a city, town, or village with a population of 200 or more inhabitants, the voters residing upon the territory outside of said school corporation shall vote separately and in one ballot box, and those residing within the school corporation containing the city, town, or village having a population of 200 or more inhabitants shall also have a separate ballot box."

In the instant case the joint boards did not fix the boundaries of the proposed district until January 9, 1958, long after the town of Pleasant Hill was incorporated, when they reduced the proposed district from twelve to eight districts.

The following cases were cited by appellees: State ex rel. Mercer v. Incorporated Town of Crestwood, 248 Iowa 627, 80 N.W.2d 489, 81 N.W.2d 452; State ex rel. Harberts v. Klemme Community School District, 247 Iowa 48, 72 N.W.2d 512; Zilske v. Albers, 238 Iowa 1050, 29 N.W.2d 189; Grant v. Norris, 249 Iowa 236, 85 N.W.2d 261; Independent School District of Switzer v. Gwinn, 178 Iowa 145, 159 N.W. 687, 690; and Varina Consolidated School District v. Harrison, 245 Iowa 864, 64 N.W.2d 268. All of these cases hold in effect that jurisdiction once acquired is maintained throughout and lay down other rules not applicable to this case but none touches upon the real issue here. None has the factual situation here involved

and sections 276.13, 276.15 and 276.16, Code, 1950, are not considered or construed.

This court, in State ex rel. Harberts v. Klemme Community School District, supra, said at page 53 of 247 Iowa, with reference to the priority cases, "True, such decisions are not based on direct prohibitions found in the statutes, but they are based upon common-law fundamental principles."

In this case we are concerned with placing upon section 276.13, Code, 1950, the construction which the legislature clearly intended when it said "* * * the voters residing upon the territory outside the limits of such school corporation shall vote separately upon the proposition to create such new corporation."

It is appropriate here to say that chapter 117, section 35, Acts of the Fifty-fifth General Assembly, repealed chapter 276, Code, 1950, so the issues here presented will not again arise.

For the reasons stated the judgment of the trial court is reversed. Reversed and remanded for judgment in accord with this opinion.—Reversed and remanded.

OLIVER, BLISS, GARFIELD, HAYS, and THORNTON, JJ., concur.

LARSON and PETERSON, JJ., dissent.

THOMPSON, C. J., joins in both dissents.

PETERSON, J.—I respectfully dissent.

I will refrain from discussing Division I of the majority opinion. I will only consider Division II. If my reasoning is correct as to said division, discussion of Division I is unnecessary and moot.

I. The majority opinion insists on connecting sections 276.13 and 276.16. It contends the last part of section 276.16 refers only to the districts with villages, etc., over two hundred, considered in section 276.13. On the contrary the two sections refer to two completely different subjects. Section 276.13 refers only to the narrow question of a district involved in the reorganization having a city, town or village within its borders with a population of over two hundred. The section states: "A school corporation containing a city, town or village." This is only one of the component parts of the reorganized district.

Section 276.16 pertains to the broad question of a new school corporation being organized by a combination of several districts, including any with cities, towns or villages. The section reads: "A new school corporation shall be organized." This refers to the district as a whole.

The pertinent parts of section 276.16 are as follows: "* * * If the majority of the votes cast by the qualified electors are in favor of the proposition, a new school corporation shall be organized, except that in cases where separate ballot boxes are required by law, a majority of the votes cast by the qualified electors from their *respective territories* shall be required." (Emphasis ours.)

The district never votes as one entity. Separate ballot boxes are required in *all districts,* in accordance with section 276.15: "The judges of election shall provide separate ballot boxes in which shall be deposited the votes cast by the qualified electors from their respective territories."

The majority opinion indicates section 276.15 also pertains only to districts having villages within their area. Its position is that this supports the majority contention that section 276.16 pertains only to such districts.

As an evidence of this error is the fact that section 276.15 was carried into the 1958 Code as section 275.22 with exactly the same wording. There are no village provisions in the 1958 Code so consequently this provision cannot refer back to village school districts. The legislature would not have re-enacted 276.15 into the 1958 Code if it intended any such restricted meaning. This is conclusive evidence that the legislature at all times intended 276.15 as well as 276.16 to pertain to all districts in the new reorganization area, and not alone to village districts.

It is my contention that where section 276.16 reads "respective territories" it means the territory of "village" or "villages" on one side and the territory of "rural districts" on the other side. I contend that under this statutory provision the villages of Altoona and Pleasant Hill should be added together as one of the "respective territories." The six rural districts should be added together as the other "respective territory." The result is a majority in favor of reorganization in both "respective

territories." Under these circumstances the vote in the two villages would be yes 309; no 145. The vote in the six rural areas would be yes, 1223; no, 103.

It is unbelievable that the legislature would intend that if a proposed district had a half dozen villages, one small village voting adversely could nullify the complete plan, provided the addition of votes in all villages had a majority for the plan.

We certainly would not say that one rural district voting adversely can destroy the reorganization, if the vote in all rural districts had a favorable majority. Conversely, we cannot reasonably interpret the legislative intent to be that one small village casting less than 10% of the votes, such as Pleasant Hill, can nullify the reorganization. That is on condition that, added to vote of the other village, there was a total favorable village majority, as there was in the case at bar.

In this case the districts voted in separate ballot boxes with the following results: Six rural districts: Four Mile Township yes 299, no 20; North Camp Township yes 104, no 45; Beaver Township yes 112, no 14; Clay Township yes 105, no 45; Babbitt Independent yes 304, no 1; two villages: Altoona Independent yes 304, no 10; Pleasant Hill Independent yes 5, no 135.

The interpretation of the majority as to section 276.16 is not only strained, but creates a legislative duplication. The majority would interpret the section as follows: "If a majority of the votes cast by the qualified electors are in favor of the proposition, a new school corporation shall be organized, *except that in Pleasant Hill Independent district a majority of the votes cast * * * shall be required.*" This provision appears in section 276.13. Is it reasonable to assume the legislature would re-enact the provision in section 276.16? Surely the enactment in 276.16 refers to something else; the whole district.

In the case at bar section 276.13 has no force and effect. In both Altoona Independent and Pleasant Hill Independent the school district is coextensive with the village as to area and voters. There is no outside territory requiring duplicate ballot boxes.

Logically, we must return to the first position above-stated:

that the legislative intent is that the "respective territories" mean one territory of villages and one of rural districts.

The majority opinion stresses the fact that the two villages are far apart and disconnected. This is of no significance. They are both within the boundaries of the new district to be formed. We can with the same reasoning say because one rural district is at the east end of the district and another at the west end, several miles apart, we have no right to add the votes in such rural districts.

II. During the last ten years each session of the legislature has revised and amended school reorganization statutes. In each revision the provisions were liberalized. The vote of a majority was given more power to create reorganizations. It has become more difficult for small obstructing minorities to destroy the formation of new districts. This has all been in the interest of better education for more children. See section 276.16, 1950 Code; sections 275.20 and 275.22, 1954 Code; sections 275.20 and 275.23, 1958 Code.

It has been the tendency of this court to liberalize our interpretation as to reorganization of school districts, to assist the Legislative branch of Government in this laudable endeavor. Zilske v. Albers, 238 Iowa 1050, 1056, 29 N.W.2d 189, 192.

In the above cited case we said: "We have held emphatically that the statutes here in question are to be liberally construed. A majority of the electors in the territory involved has an absolute right to organize into a single district provided the territory sought to be consolidated is such as the statute contemplates. Courts will go no further than to see that the methods pursued are in substantial accord with those prescribed by statute. State ex rel. Ondler v. Rowe, 187 Iowa 1116, 1123, 175 N.W. 32, 34. To adopt the language of the Rowe case: '* * * if such perfection of proceedings is to be demanded of them, few, if any, organizations of school districts could successfully withstand attacks at the hands of discordant and contentious minorities. The courts very properly * * * go to the limit of liberality in giving effect to the voice of a majority, wherever it can reasonably be done without violence to the manifest spirit and intent of the legislature.' "

III. The trial court did not consider the matter referred

to in Division II of the majority opinion and in Division I of my dissent. However, appellees urged the matter, both in the trial court and in argument in this court.

The trial court held the reorganization had priority over the incorporation in accordance with Grant v. Norris, 249 Iowa 236, 85 N.W.2d 261. This case provided the reorganization should be concluded under the provisions of chapter 276. I would not word the conclusion of the court exactly as the trial court did, but the effect is the same. As stated in my first paragraph, discussion of this proposition is unnecessary.

The majority is correct in stating the issues involved in this case will not form a precedent for the future. Chapter 276, 1950 Iowa Code, has been repealed and reorganization is now covered by sections 275.20 and 275.23, 1958 Iowa Code.

I would affirm.

LARSON, J.—I respectfully dissent.

I cannot concur with the majority in its interpretation of section 276.13. The opinion erroneously places emphasis, I feel, where it was not intended by the legislature. The statute provides: "When it is *proposed* to include in such district a school corporation containing a city, town, or village with a population of two hundred or more inhabitants, the voters residing * * * outside the limits of such school corporation shall vote separately * * *." (Emphasis supplied.) The petition herein did not propose such an inclusion when filed, for there was no incorporated town of Pleasant Hill at the time of proposal.

In State ex rel. Hilfiker v. Seaton, 191 Iowa 81, 85, 181 N.W. 796, quoted by the majority, we made it clear that "If the *petition* fixing the boundaries of a *proposed* consolidated independent school district *includes* a school corporation containing a city, town, or village with a population of 200 or more inhabitants, the voters residing upon the territory outside of said school corporation shall vote separately * * *." (Emphasis supplied.) Here we find the emphasis placed upon *the petition proposing* the territory to be included. We have often said that this is the time jurisdiction to proceed and continue unmolested is procured.

There is no question here but what, when the original petition was filed and jurisdiction obtained to continue the proposed reorganization, all of the territory in the Pleasant Hill district was rural and contained no incorporated village of over 200 population. Could subsequent collateral proceedings alter that plan of reorganization? We have said not most emphatically in the case of State ex rel. Harberts v. Klemme Community School District, 247 Iowa 48, 51, 72 N.W.2d 512, 514. We said therein:

"It is conceded the filing of the Belmond petition gave the joint board the initial jurisdiction over the area described in that petition. However, it did more; it gave the joint board sole jurisdiction for reorganization purposes."

Clearly, any subsequent attempt to create a separate village in which opposition to the proposed school district could, and in this case will, annul and defeat the entire reorganization was not contemplated in this Act. It should not be permitted, for it is a plain unauthorized subsequent interference with the sole jurisdiction previously acquired by the proposed reorganization petition.

It has been our announced policy to permit such reorganization to stand when possible, and the legislature announced its policy not to interfere with reorganizations in the process of completion by the "saving clause" in its repeal of chapter 276 of the 1950 Code.

I would not interpret sections 276.13, 276.15 and 276.16 so as to annul the reorganization completed and in operation.

I would affirm.